# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY J. LACHER, *et al.*, on behalf of themselves and others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>ARAMARK CORPORATION,<br><br>　　　　　　　Defendant. | No. 2:19-cv-00687-JP |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   RELEVANT ALLEGED FACTS ............................................................................... 3

III.  ARGUMENT ............................................................................................................ 4

    A.    Plaintiffs Bear The Burden To Plead "Plausible" Claims To Avoid
        Dismissal.................................................................................................... 4

    B.    Plaintiffs Fail To Sufficiently Plead Facts That Would Allow The Court
        To Determine Which States' Laws Should Apply To Counts I-III Of The
        Complaint................................................................................................... 5

    C.    Plaintiffs Failed To Plead A Plausible Claim For Breach Of Contract ............... 11

    D.    Plaintiffs Failed To Plead A Plausible Claim For Promissory Estoppel ............. 15

        1.    Plaintiffs failed to plausibly plead that Aramark made an express
            promise of guaranteed bonus payments.................................................... 16

        2.    Plaintiffs failed to plausibly plead that they took action or refrained
            from taking action in reliance on Aramark's alleged promise to pay
            bonuses.................................................................................................... 18

        3.    Plaintiffs failed to plausibly plead that injustice can be avoided
            only through the enforcement of Aramark's alleged promise ................. 20

    E.    Plaintiffs Failed To Plead A Plausible Claim For Unjust Enrichment ................ 21

    F.    Plaintiffs Failed To Plead A Claim For Breach Of Contract Accompanied
        By A Fraudulent Act Under The Heightened Pleading Requirements of
        Rule 9(b) .................................................................................................. 24

        1.    Plaintiffs failed to plead a breach of contract ......................................... 25

        2.    Plaintiffs failed to plead specific facts that would establish that
            Aramark breached any contract with fraudulent intent........................... 26

        3.    Plaintiffs failed to plead specific facts that would establish that
            Aramark engaged in any fraudulent act separate from the alleged
            breach of contract.................................................................................... 27

    G.    Plaintiffs Failed To Plead A Plausible Claim For A Violation Of The
        Pennsylvania Wage Payment and Collection Law ............................................. 28

**TABLE OF CONTENTS**

Page

H.   Plaintiffs Failed To Plead A Plausible Claim For A Violation Of The
     Massachusetts Payment of Wages Act ................................................................ 29

I.   Plaintiffs' Claims In Counts XII and XIII Under California Labor Code §
     204 And The California UCL Fail As A Matter Of Law ..................................... 32

IV.  CONCLUSION ............................................................................................................. 34

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ankerstjerne v. Schlumberger, Ltd.*,
   155 F. App'x 48 (3d Cir. 2005) ...............................................................................18, 19, 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................5

*Berry v. Indianapolis Life Ins. Co.*,
   608 F. Supp. 2d 785 (N.D. Tex. 2009) .........................................................................10

*Blackwell-Murray v. PNC Bank*,
   963 F. Supp. 2d 448 (E.D. Pa. 2013) ............................................................................29

*Bowden v. DB Schenker*,
   693 F. App'x 157 (3d Cir. 2017) ..............................................................................22, 23

*Brzozowski v. Pa. Tpk. Comm'n*,
   No. CV-15-2339, 2018 WL 6249849 (E.D. Pa. Nov. 28, 2018) ..............................22

*Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*,
   654 F. App'x. 80 (3d Cir. 2016) ....................................................................................16

*C & K Petroleum Prods., Inc. v. Equibank*,
   839 F.2d 188 (3d Cir. 1988).........................................................................................16

*Connor v. City of Forest Acres*,
   348 S.C. 454, 560 S.E.2d 606 (S.C. 2002) ..................................................................24

*Cooper v. Samsung Elecs. Am., Inc.*,
   374 F. App'x 250 (3d Cir. 2010) ....................................................................................5

*Cowit v. CitiMortgage, Inc.*,
   No. 12-869, 2013 WL 940466 (S.D. Ohio Mar. 8, 2013).............................................10

*Dawson v. HITCO Carbon Composites, Inc.*,
   No.16-7337, 2017 WL 7806618 (C.D. Cal. Jan. 20, 2017).........................................32

*De Asencio v. Tyson Foods, Inc.*,
   342 F.3d 301 (3d Cir. 2003).....................................................................................28, 29

*Deron v. SG Printing, Inc.*,
   No. 11-1934, 2012 WL 1902577 (M.D. Pa. May 25, 2012).....................................14, 15

## TABLE OF AUTHORITIES

Page(s)

*Doucot v. IDS Scheer, Inc.*,
    734 F. Supp. 2d 172 (D. Mass. 2010) ....................................................................................31

*Downey v. First Indem. Ins.*,
    214 F. Supp. 3d 414 (E.D. Pa. 2016) ....................................................................................21

*Dugan v. Bell Tel. of Pennsylvania*,
    876 F. Supp. 713 (W.D. Pa. 1994)........................................................................................18

*Elwell v. SAP Am., Inc.*,
    No. 18-CV-0489, 2019 WL 1114898 (E.D. Pa. Mar. 8, 2019)...........................................9, 16

*Enigma Holdings, Inc. v. Gemplus Int'l S.A.*,
    No. 05-1168, 2006 WL 2859369 (N.D. Tex. Oct. 6, 2006)...............................................10, 11

*Enter. Leasing Corp. v. Shugart Corp.*,
    231 Cal. App. 3d 737 (Cal. Ct. App. 1991)…………………………………………….......9

*Fid. Nat'l Title Ins. Co. v. Craven*,
    No. 12-4306, 2016 WL 215068 (E.D. Pa. Jan. 19, 2016).....................................................16

*Frost Nat'l Bank v. Burge*,
    29 S.W.3d 580 (Tex. Ct. App. 2000) .......................................................................................8

*Geesey v. CitiMortgage, Inc.*,
    135 F. Supp. 3d 332 (W.D. Pa. 2015) ....................................................................................17

*Gen. Insulation Co. v. Eckman Constr.*,
    992 A.2d 613 (N.H. 2010) .......................................................................................................9

*Haggard Drilling, Inc. v. Greene*,
    195 Neb. 136, 236 N.W.2d 841 (Neb. 1975) ..........................................................................9

*Hammersmith v. TIG Ins. Co.*,
    480 F.3d 220 (3d Cir. 2007).....................................................................................................7

*Harper v. Ethridge*,
    290 S.C. 112 (Ct. App. 1986) ................................................................................................24

*Herbst v. Gen. Acc. Ins. Co.*,
    No. 97-8085, 1999 WL 820194 (E.D. Pa. Sept. 30, 1999)...............................................22, 23

*Hershey Foods Corp. v. Ralph Chapek, Inc.*,
    828 F.2d 989 (3d Cir. 1987)...................................................................................................21

*Huffman v. Town of La Plata*,
    No. CIV.A. DKC 2004-2833, 2005 WL 1038854 (D. Md. May 4, 2005) ...............................9

## TABLE OF AUTHORITIES

Page(s)

*In re Domiano*,
  422 B.R. 497 (Bankr. M.D. Pa. 2009) ...................................................................14

*Ingels v. Westwood One Broad. Servs., Inc.*,
  129 Cal.App.4th 1050, 28 Cal. Rptr. 3d 933 (2005)...............................................33

*Jeske v. Maxim Healthcare Servs., Inc.*,
  2012 WL 78242 (E.D. Cal. Jan. 10, 2012) .............................................................32

*Johnson v. Hewlett-Packard Co.*,
  809 F. Supp. 2d 1114 (N.D. Cal. 2011) ..................................................................32

*Lackner v. Glosser*,
  892 A.2d 21 (Pa. Super. Ct. 2006) ...........................................................................8

*Lawson v. Life of the S. Ins. Co.*,
  286 F.R.D. 689 (M.D. Ga. 2012) ............................................................................10

*Lelio v. Marsh USA, Inc.*,
  No. CV-15-10335, 2017 WL 3494214 (D. Mass. Aug. 14, 2017) .........................30

*Lopes v. Commonwealth*,
  811 N.E.2d 501 (Mass. 2004) ...................................................................................9

*Miree v. DeKalb County, Ga.*,
  433 U.S. 25 (1977).....................................................................................................5

*Molo Oil Co. v. River City Ford Truck Sales*,
  578 N.W.2d 222 (Iowa 1998) ...................................................................................8

*Montich v. Miele USA, Inc.*,
  849 F. Supp. 2d 439 (D.N.J. 2012) ...........................................................................6

*Nabisco, Inc. v. Ellison*,
  No. CIV. A. 94-1722, 1994 WL 622136 (E.D. Pa. Nov. 8, 1994) .........................17

*Ndubizu v. Drexel Univ.*,
  768 F. Supp. 2d 796 (E.D. Pa. 2011) ......................................................................18

*Neitzke v. Williams*,
  490 U.S. 319 (1989)...................................................................................................4

*Neuman v. Levan*,
  CIV. A. 8:08-03418, 2009 WL 1856569 (D.S.C. June 26, 2009) ..............24, 27, 28

*Oberneder v. Link Computer Corp.*,
  696 A.2d 148 (Pa. 1997)..........................................................................................28

# TABLE OF AUTHORITIES

Page(s)

*Panetta v. SAP Am., Inc.*,
   No. 05-4511, 2007 WL 1001889 (E.D. Pa. Mar. 30, 2007) ...................................29

*Pantoja v. Countrywide Home Loans, Inc.*,
   640 F. Supp. 2d 1177 (N.D. Cal. 2009) ...................................33

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012)...................................33

*Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)...................................7

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)...................................5

*Prozinski v. Ne. Real Estate Servs., LLC*,
   59 Mass. App. Ct. 599 (Mass. App. Ct. 2003)...................................30

*Ramsey v. Vanguard Servs.*,
   No. 8:07-CV-00265, 2007 WL 904526 (D.S.C. Mar. 22, 2007) ...........................25

*Rexnord Holdings v. Bidermann*,
   21 F.3d 522 (2d Cir. 1994)...................................8

*Richardson Hospital Authority v. Duru*,
   387 S.W.3d 109 (Tex. App. Ct. 2012) ...................................9

*Ring v. The Sports Auth., Inc.*,
   No. CIVA6:04-21848, 2006 WL 83047 (D.S.C. Jan. 10, 2006) ...................................24, 27

*River's Edge Pharm., LLC v. Gorbec Pharm. Servs.*,
   No. 1:10CV991, 2012 WL 1439133 (M.D.N.C. Apr. 25, 2012)...................................9

*Roberts v. Ebay Inc.*,
   No. 14-4904, 2017 WL 525925 (D.S.C. Feb. 9, 2017)...................................24, 25

*Search, Inc. v. Fleming Steel Co.*,
   787 A.2d 988 (Pa. Super. Ct. 2001) ...................................9

*Sheedy v. Lehman Bros. Holdings Inc.*,
   No. CIV. A. 11-11456, 2011 WL 5519909 (D. Mass. Nov. 14, 2011) ...................................31

*Shell's Disposal & Recycling v. City of Lancaster*,
   504 F. App'x 194 (3d Cir. 2012) ...................................12

*Silva v. AvalonBay Cmtys., Inc.*,
   No. 15-4157, 2015 WL 11422302 (C.D. Cal. Oct. 8, 2015)...................................32

## TABLE OF AUTHORITIES

Page(s)

*Sloan v. Frascella*,
No. 12-3609, 2013 WL 4433366 (E.D. Pa. Aug. 16, 2013) .......................................12, 13, 14

*Smith v. Nationstar Mortg., LLC*,
No. 15-CV-0888, 2015 WL 13759742 (D.S.C. Aug. 3, 2015)................................................27

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
533 F.3d 162 (3d Cir. 2008)................................................................................................21

*State v. Tenet Healthcare Corp.*,
420 F. Supp. 2d 1288 (S.D. Fla. 2005) ................................................................................9

*Stilwell Value Partners I, L.P. v. Prudential Mut. Holding Co.*,
No. 06-4432, 2007 WL 2345281 (E.D. Pa. Aug. 15, 2007) ............................................16, 17

*Stone & Edwards Ins. Agency Inc. v. Stumpf*,
31 Pa. D. & C.4th 462 (Pa. Ct. Com. Pl. 1996) ....................................................................21

*Szymanski v. Sacchetta*,
No. 10-02336, 2012 WL 246249 (E.D. Pa. Jan. 26, 2012)....................................................12

*Toll v. Tannenbaum*,
596 F. App'x 108 (3d Cir. 2014) ....................................................................................7, 10

*Tomlinson v. Mixon*,
367 S.C. 467, 626 S.E.2d 43 (S.C. 2006) .............................................................................25

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
977 F. Supp. 2d 462 (E.D. Pa. 2013) ...................................................................................12

*Turkovich v. APC Capital Partners*,
259 F. Supp. 2d 314 (D. Vt. 2002)........................................................................................9

*Tyco Elecs. Corp. v. Milwaukee Elec. Tool Corp.*,
No. 10-1807, 2012 WL 1205700 (M.D. Pa. Feb. 21, 2012)...................................................20

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370 (4th Cir. 2008) .........................................................................................24, 26

*Udujih v. City of Philadelphia*,
513 F. Supp. 2d 350 (E.D. Pa. 2007) ...................................................................................15

*Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*,
No. 17-4660, 2018 WL 1757727 (E.D. Pa. Apr. 12, 2018)...................................................16

*Van Der Molen v. Wash. Mut. Fin., Inc.*,
835 N.E.2d 61 (Ill. App. Ct. 2005) ......................................................................................8

## TABLE OF AUTHORITIES

Page(s)

*Velazquez v. GMAC Mortg. Corp.*,
  605 F. Supp. 2d 1049 (C.D. Cal. 2008) ...............................................................33

*Vikco Ins. Serv. Inc. v. Ohio Indem. Co.*,
  70 Cal.App.4th 55 (1999) ....................................................................................32

*Ware v. Rodale Press, Inc.*,
  322 F.3d 218 (3d Cir. 2003) ................................................................................12

*Weems v. Citigroup Inc.*,
  453 Mass. 147, 900 N.E.2d 89 (Mass. 2009) ................................................30, 31

*Weiss v. DHL Express, Inc.*,
  718 F.3d 39 (1st. Cir. 2013) ............................................................................30, 31

*Weissman v. Seiyu, Ltd.*,
  No. 98 Civ. 6976-HB, 2000 WL 42205 (S.D.N.Y. Jan. 14, 2000) ........................9

*Wyeth, Inc. v. Blue Cross & Blue Shield of Ala.*,
  42 So. 3d 1216 (Ala. 2010) ...................................................................................9

*Young v. Fidelity Research & Analysis*,
  No. 10-2434, 2011 WL 12546380 (Mass. Super. Ct. Aug. 30, 2011) ...............30, 31

**STATUTES**

33 Pa. Stat. Ann. § 1-6 .................................................................................................8

43 Pa. Stat. §260.3(a) .................................................................................................28

740 Ill. Comp. Stat. Ann. 80/1 ....................................................................................8

California Labor Code § 204 ................................................................................ passim

California Unfair Competition Law .................................................................... passim

Iowa Code Ann. § 622.32 ............................................................................................8

Mass. Gen. Laws Ann. ch. 149, § 148 ......................................................................29

Mass. Gen. Laws Ann. ch. 259, § 1 ............................................................................8

Massachusetts Equal Pay Act ....................................................................................30

Massachusetts Payment of Wages Act ............................................................... passim

N.C. Gen. Stat. § 22-1-5 ..............................................................................................8

N.Y. Gen. Oblig. Law § 5-701 .....................................................................................8

## TABLE OF AUTHORITIES

Page(s)

Pennsylvania Wage Payment and Collection Law ........................................................1, 2, 28, 29

Tex. Bus. & Com. Code Ann. § 26.01 ...............................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .....................................................................................24, 25, 26, 27

Fed. R. Civ. P. 12(b)(6)................................................................................... passim

U.S. Const. Amend. XIV
  Due Process Clause...............................................................................................6

U.S. Const. Article IV, § 1
  Full Faith and Credit Clause ...............................................................................6

## I.   <u>PRELIMINARY STATEMENT</u>

Plaintiffs assert an array of statutory and common law claims against Defendant Aramark Corporation ("Aramark") in the Second Amended Complaint (the "Complaint" or "SAC"). All of these claims turn on the premise that Aramark failed to pay year-end bonuses allegedly owed to managers across the country.  Plaintiffs never identify, however, any express promise to pay any specific bonuses to anyone.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Aramark respectfully requests that the Court dismiss Plaintiffs' causes of action for breach of contract (Count I), promissory estoppel (Count II), unjust enrichment (Count III), breach of contract accompanied by a fraudulent act (Count IV), violation of the Pennsylvania Wage Payment and Collection Law ("PWPCL") (Count VIII), violation of the Massachusetts Payment of Wages Act ("MPWA") (Count XI), violation of California Labor Code § 204 (Count XII), and violation of the California Unfair Competition Law ("UCL") (Count XIII).  While Aramark will establish on summary judgment that the remaining Counts of the SAC are without merit, the Court at a minimum should dismiss these claims now because Plaintiffs have failed to even plead plausible causes of action.  In the alternative to dismissal of Counts I-III, the Court should strike the nationwide class allegations associated with those claims for the reasons set forth in Aramark's concurrently filed Motion to Strike Plaintiff's Class Allegations.  Dkt. 16-1.

As a threshold matter, the Court should dismiss the common law claims in Counts I-III because Plaintiffs failed to plead any facts that would allow the Court to determine which states' laws should actually apply to those claims.  Although Plaintiffs baldly assert that Pennsylvania common law should apply to those claims for all Plaintiffs and putative class members nationwide, there are material differences in the various states' laws regarding breach of

contract, promissory estoppel, and unjust enrichment that preclude applying Pennsylvania law nationwide.

Alternatively, even if Pennsylvania law could govern Counts I-III, Plaintiffs failed to plead plausible claims for breach of contract, promissory estoppel, and unjust enrichment. Specifically, Plaintiffs failed to plead any express contractual obligation with clear terms guaranteeing any bonus for 2018 to support their breach of contract claim. Plaintiffs similarly failed to plead facts establishing any express promise, detrimental reliance, or "injustice," as required to support their promissory estoppel claim. Plaintiffs' unjust enrichment claim fails as well because the allegations in the Complaint, even if true, would be insufficient to establish "unconscionable" circumstances as required for the *prima facie* case.

Plaintiffs' cause of action for "breach of contract accompanied by a fraudulent act" for a South Carolina sub-class fails for three reasons. First, Plaintiffs failed to plead a plausible breach of contract claim, as discussed above. Second, Plaintiffs failed to plead any facts demonstrating fraudulent intent. Third, Plaintiffs failed to plead a fraudulent act independent of the alleged breach, as required by South Carolina law.

Plaintiffs' bare-bones allegations also fail to satisfy the basic requirements of the PWPCL and MPWA. The Court should dismiss the PWPCL cause of action because Plaintiffs do not and cannot plead an express contractual entitlement to the claimed bonuses. Similarly, the Court should dismiss the MPWA cause of action because the allegedly earned "wages" sought were discretionary bonuses that are not recoverable under the MPWA as a matter of law.

Finally, Plaintiffs' claims under California Labor Code § 204 and the UCL in Counts XII-XIII fail as a matter of law for two reasons. First, Section 204 does not provide a private right of action, and courts have consistently dismissed Section 204 claims for that reason.

Second, Plaintiffs' UCL claim is entirely derivative of and dependent on their Section 204 claim and, therefore, should be dismissed as well.

In sum, Plaintiffs failed to plead plausible claims for Counts I-IV, VIII, XI, XII, and XIII. Therefore, the Court should dismiss each cause of action without leave to amend given that Plaintiffs have already had three opportunities to plead viable claims.

## II.   RELEVANT ALLEGED FACTS

Plaintiffs are thirteen current and former Aramark managers who are residents of or have worked for Aramark in varying jobs in twelve different states: California, Delaware, Florida, Iowa, Illinois, Massachusetts, North Carolina, New York, Pennsylvania, South Carolina, Tennessee, and Texas. *See* SAC ¶¶ 1-13, 21-33.  The gravamen of Plaintiffs' claims is their allegation that Aramark agreed to pay bonuses to its managers in Career Bands 5-8 for 2018, but then failed to do so.  Plaintiffs do not cite to any written contract, however, that guaranteed any certain bonus payments for 2018.  Instead, Plaintiffs rely on pieces of varying offer letters, employment agreements, email communications, and summaries of the Management Incentive Bonus ("MIB") and Front Line Manager ("FLM") plans.  SAC ¶¶ 34-38, 4-44, 61-73.  Even those documents fail to expressly – or even implicitly – guarantee any particular bonuses for 2018.

For example, the offer letters and employment agreements that some (but not all) Plaintiffs attached to the Complaint speak to their eligibility for (not entitlement to) bonuses.  *See* SAC, Exhibits ("Exs.") A-C.  Moreover, those documents relate only to bonus eligibility in 2016 and 2017 and say nothing about 2018.  *See id.*  The emails attaching the bonus plan summaries go a step further and expressly state that "receipt of this email ***does not guarantee participation in the bonus program***."  *See* SAC*, Exs. D-E (emphasis added).

3

In sum, as illustrated by the very documents that Plaintiffs rely upon in the Complaint, Aramark's bonuses were discretionary, as well as subject to Aramark's "interpretation and administration." *Id.* Any given employee's MIB bonus eligibility further depended on numerous factors such as adjusted operating income, revenue, individual objectives (including operations, growth, finance, and engagement metrics), individual performance, district team performance, and region team performance. *See* SAC, Ex. D. Likewise, FLM bonus eligibility turned on factors such as front line contribution (which is impacted by operating expenses), revenue, client budget, labor productivity, partnership value index, patient satisfaction, individual objectives, and industry objectives. SAC, Ex. E.

Aramark informed its managers that it decided not to pay 2018 performance bonuses for Career Bands 5-8 because there was great disparity in financial performance across its lines of business. *See* SAC, Ex. I. In a separate effort to recognize select managers for their success, impact, and importance to Aramark, however, Aramark provided one-time Special Recognition Awards to certain managers in early 2019. *Id.* These awards were part of Aramark's decision to use the majority of its savings from U.S. tax reform to make the single largest one-time investment in its employees in Aramark's history. *Id.* For example, the Complaint acknowledges that lead Plaintiff Henry Lacher received a $27,500 Special Recognition Award. *Id.* Like Plaintiff Lacher, select managers across the country received Special Recognition Awards that often exceeded what they could have received through 2018 bonuses.

## III.  ARGUMENT

### A.  Plaintiffs Bear The Burden To Plead "Plausible" Claims To Avoid Dismissal.

The purpose of Federal Rule of Civil Procedure 12(b)(6) is to eliminate baseless claims and streamline litigation by dispensing with allegations that will result in needless discovery. *Neitzke v.*

*Williams*, 490 U.S. 319, 326-27 (1989).  When, as here, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citation omitted).  Dismissal of claims failing to meet this standard is especially vital for cases (such as this putative action) that present the threat of "sprawling, costly, and hugely time-consuming" discovery.  *Id.* at 560 n.6.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept only well-pled factual allegations as true and view them in the light most favorable to the nonmoving party.  *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n.2 (1977).  Thus, a plaintiff's obligation to provide the grounds for his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545; *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (explaining that it is not "sufficient to allege mere elements of a cause of action").  Indeed, "naked assertion[s] devoid of further factual enhancement" are similarly inadequate.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, to survive a motion to dismiss under Rule 12, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547.

A claim has "facial plausibility" only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  That is not the case here.  The Court should dismiss Counts I-IV, VIII, and XI because they each fail to state a plausible cause of action.

**B.      Plaintiffs Fail To Sufficiently Plead Facts That Would Allow The Court To Determine Which States' Laws Should Apply To Counts I-III Of The Complaint.**

As a threshold matter, because Plaintiffs' claims in Counts I-III are based on state common law, the Court must decide which state law to apply to those claims.  *See Cooper v.*

5

*Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (affirming district court's decision to conduct a choice-of-law analysis at the outset of the case as part of a decision to grant a motion to dismiss); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 444 (D.N.J. 2012) (granting in part a motion to dismiss and holding that "the Court must decide which state law to apply to [plaintiff's] claims" before examining the merits of defendant's substantive arguments to dismiss).

Here, Plaintiffs' claims in Counts I-III should be dismissed because Plaintiffs have not pled the facts needed to determine which states' laws should apply to those claims for themselves or the thousands of putative nationwide class members they purport to represent. Instead, Plaintiffs simply allege that "basic common-law principles applicable in Pennsylvania" should apply to everyone.  SAC, ¶¶ 61, 71.[1]  However, Plaintiffs also seek to certify eight statewide subclasses bringing various state statutory claims based on where each Plaintiff and certain putative class members worked for Aramark.  SAC ¶¶ 46-53.  Applying Pennsylvania law to a nationwide class that overlaps with eight state law subclasses defies common sense.  For example, accepting Plaintiffs' choice of law as pled in the SAC would require the Court to apply Pennsylvania law for a breach of contract claim (Count I) brought by a Plaintiff in South Carolina but then apply South Carolina law for that same Plaintiff's claim for breach of contract accompanied by a fraudulent act (Count IV).

Moreover, the Supreme Court has held that applying one state's law to a purported nationwide class without an adequate choice-of-law analysis would violate the Due Process Clause of the Fourteenth Amendment, as well as the Full Faith and Credit Clause of Article IV, §

---

[1] Plaintiffs do not explicitly allege which state's law should apply to their promissory estoppel claim as they do for Counts I and III, perhaps conceding (as they should) that a choice-of-law analysis is required.

1 of the Constitution.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985).  The Complaint ignores this basic principle entirely and offers no allegations to support the extension of Pennsylvania common law to every class member nationwide.

To determine which states' laws actually apply to Counts I-III, the Court must engage in a two-part analysis: (1) determine if there is a "true conflict" between the various applicable state laws, which requires not only looking at the law, but also the public policies behind the laws in each state that may suggest conflicts; and (2) if a conflict exists, determine which of the states has a greater interest in applying its law to the dispute.  *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (citing *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).  For the second part of this choice-of-law analysis, courts also must weigh the "contacts" between the parties and the states at issue by looking at factors such as: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.  *Hammersmith*, 480 F.3d at 232-33; *Toll v. Tannenbaum*, 596 F. App'x 108 (3d Cir. 2014) (examining choice-of-law factors to be considered under Pennsylvania law for breach of contract, promissory estoppel, and unjust enrichment claim, and affirming district court's application of New York law instead of Pennsylvania law for those claims).

Plaintiffs attempt to bypass this critical choice-of-law analysis by alleging without explanation that Pennsylvania common law is similar to the law of every other state for breach of contract, promissory estoppel, and unjust enrichment claims.  *See* SAC ¶¶ 61, 68, 71.  To the

contrary, there are material differences among state laws in the elements of and defenses to the

common law claims in Counts I-III.[2]  For example:

- **Breach of Contract.**  The laws of Texas, New York, Iowa, and Illinois (where
  Plaintiffs Gaston, Mayer, Peterson, and Weronko reside and/or worked, *see* SAC
  ¶¶ 3, 4, 8, 9) require Plaintiffs to prove that they performed their obligations in the
  contract as part of the *prima facie* case, while Pennsylvania law does not require
  proof of performance.[3]  Moreover, some states, including New York, Illinois,
  Texas, Iowa, and Massachusetts (where Plaintiffs Mayer, Weronko, Gaston,
  Peterson, and Doherty worked), have a statute of frauds that bars recovery for
  alleged oral or implied contracts that cannot be performed within one year, like
  the contracts Plaintiffs allege here.[4]  In contrast, Pennsylvania and North Carolina
  are among the states that do not include the "one-year" provision in their statutes
  of frauds.[5]

- **Promissory Estoppel.**  Under Pennsylvania law, a plaintiff must prove the
  following to establish a promissory estoppel claim: (1) the promisor made a clear
  and definite promise that it should have reasonably expected would induce action
  or forbearance on the part of the promisee; (2) the promisee actually took action
  or refrained from taking action in reliance on the promise; and (3) injustice can be
  avoided only by enforcing the promise.  However, New York, Vermont, and
  Maryland common law also require proof that the defendant's conduct was

---

[2] Aramark explores in further detail the differences between various state laws relating to these claims and defenses in its concurrently filed Memorandum of Law in Support of the Motion to Strike Plaintiff's Nationwide Class Allegations ("Motion to Strike").  Dkt. 16-1 at 18-22.

[3] *Compare Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006); *with Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. Ct. App. 2000), *Rexnord Holdings v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994), *Molo Oil Co. v. River City Ford Truck Sales*, 578 N.W.2d 222, 224 (Iowa 1998) (citations omitted), and *Van Der Molen v. Wash. Mut. Fin., Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005).

[4] *See* N.Y. Gen. Oblig. Law § 5-701; 740 Ill. Comp. Stat. Ann. 80/1; Tex. Bus. & Com. Code Ann. § 26.01; Iowa Code Ann. § 622.32; Mass. Gen. Laws Ann. ch. 259, § 1.  As explained further in the Motion to Strike, Plaintiffs allege that they are entitled to bonuses based on the existence of implied contracts created by various verbal and written communications that occurred over the course of many years.  For example, Plaintiffs rely on offer letters from 2016 and 2017 (*see* SAC Ex. A-C) and verbal statements made during interviews in those years (*see* SAC ¶ 36) to support their implied contract claim.  Any contracts implied by communications in 2016 and 2017, however, certainly could not have been performed within one year.  Likewise, any emails or verbal statements which allegedly promised bonuses over a year later could also be barred by the statute of frauds from being considered enforceable contracts.  Thus, depending on the applicable state statute of frauds, this doctrine could serve as a complete defense to Plaintiffs' breach of contract claims.

[5] 33 Pa. Stat. Ann. § 1-6; N.C. Gen. Stat. § 22-1-5.

"unconscionable."[6]  Furthermore, not all states allow recovery of affirmative relief through a promissory estoppel claim.  For example, courts in North Carolina (where Plaintiff Masonoff worked, SAC ¶ 22), have held that a promissory estoppel claim is not available as an "affirmative" right of action to recover damages in lieu of an enforceable contract.[7]

- **Unjust Enrichment.**  States such as Texas, Florida, Massachusetts, and New Hampshire do not recognize unjust enrichment as an independent cause of action.[8]  In Pennsylvania, an unjust enrichment claim requires proof that a defendant either wrongfully secured or passively received a benefit, in either case under inequitable circumstances.  However, California and Nebraska require proof that the defendant also engaged in fraud, duress, or taking of an undue advantage.[9]

Indeed, other courts have noted the significant differences in states' laws regarding breach of

contract, promissory estoppel, and unjust enrichment claims in the context of deciding motions

---

[6] *Compare Elwell v. SAP Am., Inc.*, No. 18-CV-0489, 2019 WL 1114898, at *5 (E.D. Pa. Mar. 8, 2019); *with Weissman v. Seiyu, Ltd.*, No. 98 Civ. 6976-HB, 2000 WL 42205, at *32 (S.D.N.Y. Jan. 14, 2000), *Turkovich v. APC Capital Partners*, 259 F. Supp. 2d 314, 320 (D. Vt. 2002), and *Huffman v. Town of La Plata*, No. CIV.A. DKC 2004-2833, 2005 WL 1038854, at *32 (D. Md. May 4, 2005).

[7] *River's Edge Pharm., LLC v. Gorbec Pharm. Servs.*, No. 1:10CV991, 2012 WL 1439133, at *32 (M.D.N.C. Apr. 25, 2012) (dismissing promissory estoppel claim because "while some courts will use affirmative or offensive promissory estoppel to supply a missing contract term, and bind the parties, North Carolina courts do not recognize a claim for this type of 'offensive' promissory estoppel") (citing *Home Elec. Co. of Lenoir, Inc. v. Hall and Underdown Heating and Air Conditioning Co.*,  358 S.E.2d 539, 541 (N.C. 1987)).

[8] *Richardson Hospital Auth. v. Duru*, 387 S.W.3d 109, 114 (Tex. App. Ct. 2012) ("This Court has held that unjust enrichment is not an independent cause of action."); *State v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (dismissing unjust enrichment claim under Florida law because "Plaintiffs cannot base an unjust enrichment claim on alleged wrongdoing for which an independent basis for recovery exists" and because "[a]s soon as a claimant relies on a wrong to supply the unjust factor . . . the right on which [the plaintiff] relies arises from that wrong, not from unjust enrichment"); *Lopes v. Commonwealth*, 811 N.E.2d 501, 509 (Mass. 2004) ("[T]he plaintiffs' claim of unjust enrichment does not state a separate cause of action, but a theory of recovery."); *Gen. Insulation Co. v. Eckman Constr.*, 992 A.2d 613, 621 (N.H. 2010) (finding that "unjust enrichment generally does not form an independent basis for a cause of action").

[9] *Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001); *Enter. Leasing Corp. v. Shugart Corp.*, 231 Cal. App. 3d 737, 748, 282 Cal. Rptr. 620, 626 (Cal. Ct. App. 1991); *Haggard Drilling, Inc. v. Greene*, 195 Neb. 136, 236 N.W.2d 841 (Neb. 1975); *Wyeth, Inc. v. Blue Cross & Blue Shield of Ala.*, 42 So. 3d 1216, 1225 (Ala. 2010).

to strike class allegations filed at the outset of a case.  *See, e.g.*, *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 696-99 (M.D. Ga. 2012) (granting motion to strike putative nationwide class action for breach of contract claims due to differences in states' laws for such claims); *Cowit v. CitiMortgage, Inc.*, No. 12-869, 2013 WL 940466 (S.D. Ohio Mar. 8, 2013) (granting motion to strike nationwide class allegations for promissory estoppel and unjust enrichment claims due in part to differences in states' laws for those claims).

Given these significant differences, it is clear that the second part of the choice-of-law analysis (i.e., weighing of contacts) is necessary to determine which states' laws should apply to Counts I-III.  However, the only allegations pled by Plaintiffs that are relevant to this choice-of-law analysis are (1) that Aramark is headquartered in Philadelphia, Pennsylvania, and (2) that only two of the thirteen Plaintiffs lived or worked in Pennsylvania, while the rest resided in eleven different states.  *See* SAC ¶¶ 1-14, 21-33.  Plaintiffs have not pled any of the other necessary facts for the required analysis, including (a) the places where Aramark and each Plaintiff and putative class member entered into the varying alleged contracts, (b) the places where these parties negotiated the alleged contracts, (c) the places where these parties' alleged contractual obligations were performed, or (d) the location of the subject matter of the alleged contracts for thousands of managers.  *Tannenbaum*, 596 F. App'x at 110-113.  Without such facts, the Court cannot determine which states' laws should actually apply to Counts I-III.

Courts have dismissed claims in similar cases where plaintiffs failed to plead sufficient facts for a choice-of-law analysis.  *See, e.g.*, *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) ("A complaint should be dismissed when the governing law cannot be determined from the facts alleged therein."); *Enigma Holdings, Inc. v. Gemplus Int'l S.A.*, No. 05-1168, 2006 WL 2859369, at *6 (N.D. Tex. Oct. 6, 2006) (granting defendants' motion to

dismiss "[b]ecause choice of law is a threshold inquiry that must be made before the Court can adequately address the sufficiency of the pleadings" and plaintiff failed to plead facts sufficient for the court to determine which law or laws should apply).

In *Enigma,* the court granted the defendant's motion to dismiss the plaintiffs' state law fraud claims because the complaint did "not allege sufficient facts for the Court to determine choice of law for [those claims]." *Id.* at 7. Specifically, the court held that under Texas choice-of-law rules for fraud claims, the court needed to look at factors such as: (a) the place or places where the plaintiff acted in reliance upon defendant's representations; (b) the place where the plaintiff received the representations; (c) the place where defendant made the representations; and (d) the residency or domicile of the parties. *Id.* (citing Restatement (Second) of Conflict of Laws § 148(2)). The court noted that although the plaintiffs claimed that Texas law should apply to their fraud claims because the defendant maintained its headquarters in Texas, the plaintiffs failed to plead any other facts that would allow the court to determine which states' laws should apply. *Id.* The court dismissed the fraud claims because without knowing which states' laws applied, the court could not address the defendant's other arguments for dismissal. *Id.*

Here, too, the Court should dismiss Plaintiffs' claims in Counts I-III because Plaintiffs failed to plead the basic facts necessary for the Court to conduct a choice-of-law analysis and determine which states' laws should apply to those claims for purposes of this Motion and the remainder of any litigation.

### C. Plaintiffs Failed To Plead A Plausible Claim For Breach Of Contract.

Even assuming that Pennsylvania common law regarding breach of contract claims could apply to the entire putative nationwide class – despite the absence of any allegations supporting a choice-of-law analysis and despite the material differences in state laws governing this cause of

action (*see supra* at Section III.B) – Plaintiffs have still failed to plead a plausible claim for breach of contract.  The Court should also dismiss Count I for this second, alternative reason.

To prevail on a breach of contract claim under Pennsylvania law, a plaintiff must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). "The elements of an enforceable contract under Pennsylvania law are: (1) a manifestation of an intent to be bound by the terms of the agreement, (2) sufficiently definite terms, and (3) an agreement supported by adequate consideration." *Szymanski v. Sacchetta*, No. 10-02336, 2012 WL 246249, at *4 (E.D. Pa. Jan. 26, 2012) (citing *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 516 (Pa. Super. Ct. 1995)).

Plaintiffs have not pled a plausible claim for breach of contract because they have not alleged the existence of any contract with sufficiently definite terms.  Under Pennsylvania law, a contract is only enforceable if "the material and necessary details of the bargain are set forth with sufficient clarity." *Sloan v. Frascella*, No. 12-3609, 2013 WL 4433366, at *1 (E.D. Pa. Aug. 16, 2013) (citations omitted). The terms of a contract must be reasonably certain enough to "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 977 F. Supp. 2d 462, 470 (E.D. Pa. 2013) (citing Restatement (Second) of Contracts § 33 (1981)).  "A contract fails for indefiniteness when it is impossible to understand what the parties agreed to because the essential terms are ambiguous or poorly defined."  *Shell's Disposal & Recycling v. City of Lancaster*, 504 F. App'x 194, 202 (3d Cir. 2012); *see also Sloan*, 2013 WL 4433366, at **3-4 (holding that no contract existed where plaintiff failed to identify the material terms of the agreement).

Here, Plaintiffs purport to establish the existence of contracts that allegedly bound

Aramark to pay bonuses for 2018 with nothing more than the following allegations/documents:

- Aramark allegedly made promises to pay bonuses "verbally during job interviews and through formal offer letters" (SAC ¶ 36, Exs. A-C);

- Aramark paid bonuses in other years before 2018 (SAC ¶ 37);

- An email from February 26, 2018, attaching a summary of the 2018 MIB Plan (SAC ¶ 38, Ex. D);

- A summary of the 2018 FLM Plan (SAC ¶ 38, Ex. E);

- Plaintiffs' allegations about the amount they are "approximately" owed, without explanation of their calculations (SAC ¶ 39);

- Aramark allegedly provided severance agreements to employees terminated between July 1, 2018 and September 30, 2018 that purportedly stated that such employees would be "eligible to receive a pro-rated bonus" (SAC ¶ 40 (actual severance agreements not attached to the Complaint));

- An email from December 3, 2018 that Aramark allegedly sent to all U.S. managers stating that "[t]his is to inform you that bonus payments, historically paid in December, will be paid in February" but not stating whether all employees would receive bonuses or which employees would receive bonuses (SAC ¶ 41, Ex. F);

- An email from January 29, 2019, stating that bonus and incentive payments for "eligible employees" would be made on February 15 but again not specifying which employees would receive bonuses (SAC ¶ 42, Ex. G); and

- An email thread between Plaintiff Gaston and Aramark between September 26-27, 2018, reflecting that Gaston "will be eligible for his bonus payment for 2018" (SAC ¶ 43, Ex. H).

None of these allegations or documents provide "material and necessary details of the

[purported] bargain" or "sufficient clarity" on whether Aramark had an obligation to pay any

specific amount of bonuses in 2018 to Plaintiffs or the thousands of putative class members.

*Sloan*, No. 12-3609, 2013 WL 4433366, at *1.

For example, the offer letters attached to the Complaint speak to Plaintiffs Lacher,

Gaston, and Masonoff's eligibility for (not entitlement to) bonuses for Fiscal Year 2016 or 2017

– they do not mention bonuses for 2018 at all.  *See* SAC, Exs. A-C.  The same goes for the alleged severance agreements and Plaintiff Gaston's individual email communication with Aramark, which Plaintiffs admit merely discuss eligibility for bonuses and not an entitlement. SAC ¶ 40, Ex. H.

The MIB and FLM plan summaries cited by Plaintiffs describe how bonuses under those plans may be calculated based on a number of individual performance metrics, as well as metrics that are outside of each employee's control, such as "District and Regional Performance" or "Adjusted Operating Income."  SAC, Exs. D-E.  Critically, they also state that the plan summaries are subject to Aramark's "interpretation and administration."  *See id.*  Thus, the MIB and FLM plan summaries simply do not guarantee that any particular bonuses will be paid to anyone.  To the contrary, the email attaching the plan summaries specifically states that "***receipt of this email does not guarantee participation in the bonus program***."  SAC, Ex. D.

Finally, the email communications in Exhibits F and G merely reflect that Aramark expected bonuses to be paid in February, without mention of how much Aramark would pay or to whom.  SAC, Ex. I.  Indeed, those communications do not mention the MIB or FLM plans at all.  And because Plaintiffs do not and cannot allege that Aramark failed to pay any bonuses at all for 2018, Plaintiffs in turn cannot even establish that the statements Aramark made in Exhibits F and G were false.

Courts have granted motions to dismiss in similar cases where a plaintiff failed to plead the essential terms of an alleged contract with specificity or clarity.  *See, e.g.*, *Deron v. SG Printing, Inc*., No. 11-1934, 2012 WL 1902577, at *5 (M.D. Pa. May 25, 2012); *In re Domiano*, 422 B.R. 497, 504 (Bankr. M.D. Pa. 2009) (finding that the existence of a contract was not properly alleged where a plaintiff failed to plead the essential terms of the contract because "the

Court should not be asked to speculate as to the terms of the alleged contract"); *Udujih v. City of Philadelphia*, 513 F. Supp. 2d 350, 357 (E.D. Pa. 2007) (same).  In *Deron*, the court granted a motion to dismiss a plaintiff's breach of contract claim because, while the plaintiff pled that his employer breached a contract by failing to pay him over $400,000 in commissions, "he nonetheless failed to allege the essential terms of the contract," such as the specific terms and conditions that allegedly dictated how those commissions were calculated or earned.  *Id.* at *3-4. The court also found that the complaint was "rife with references to unspecified 'terms and conditions,'" which the plaintiff did not attach to the complaint.  *Id.* Thus, the court found that "[a]t best, plaintiff allege[d] that some kind of contract terms exist[ed] . . . . This, however, [did] not amount to an allegation of the essential terms of the contract."  *Id.*

Here, like in *Deron*, Plaintiffs have not pled a plausible claim for breach of contract because they have not alleged the existence of any contract with sufficiently definite terms. Indeed, as discussed above, none of Plaintiffs' allegations or documents set forth with clarity the terms and conditions of Aramark's alleged contractual obligations to pay bonuses to Plaintiffs, let alone thousands of others with their own offer letters and emails.  Accordingly, the Court should dismiss Count I of the Complaint for failure to plead a plausible claim for breach of contract.

### D.       Plaintiffs Failed To Plead A Plausible Claim For Promissory Estoppel.

Again, even if Pennsylvania common law regarding promissory estoppel claims somehow could apply to the entire putative nationwide class, Plaintiffs have still failed to plausibly plead the elements of a promissory estoppel claim.  The Court should dismiss Count II for this reason as well.

Under Pennsylvania law, a claim for promissory estoppel requires one to plead and ultimately prove that (1) the promisor made a clear and express promise that the promisor should

15

have reasonably expected to induce action or forbearance on the part of the plaintiff; (2) the plaintiff actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.  *Elwell v. SAP Am., Inc.*, 2019 WL 1114898, at *5 (E.D. Pa. Mar. 8, 2019) (citing *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003 (Pa. Super. Ct. 1997)).  Here, Plaintiffs' promissory estoppel claim fails because (1) they have not pled the existence of an express promise of a guaranteed bonus, (2) they have not pled that they took any action or refrained from taking any action in reliance on such promise, and (3) they have not pled that injustice can be avoided only be enforcing the alleged promise.

### 1.    Plaintiffs failed to plausibly plead that Aramark made an express promise of guaranteed bonus payments.

"The first essential element of promissory estoppel requires an express promise between the promisor and promisee." *Fid. Nat'l Title Ins. Co. v. Craven*, No. 12-4306, 2016 WL 215068, at *7 (E.D. Pa. Jan. 19, 2016).  A "broad and vague implied promise" will not suffice to satisfy the first element. *C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988) (upholding dismissal of promissory estoppel claim based on "implied promise" by bank to "administer the main checking account . . . in the normal, banking fashion."); *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*, 654 F. App'x. 80, 100 (3d Cir. 2016) (affirming dismissal of promissory estoppel claim on motion to dismiss based on an "implied promise" to "continue to do business indefinitely"); *Stilwell Value Partners I, L.P. v. Prudential Mut. Holding Co.*, No. 06-4432, 2007 WL 2345281, at *7 (E.D. Pa. Aug. 15, 2007) (holding that a promissory estoppel claim requires an "express promise" that is "certain and explicit").

Accordingly, courts have regularly dismissed promissory estoppel claims based on vague or ambiguous promises.  *See, e.g.*, *Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, No. 17-4660, 2018 WL 1757727, at **6-8 (E.D. Pa. Apr. 12, 2018) (dismissing promissory estoppel

claim on motion to dismiss based on lack of express promise); *Geesey v. CitiMortgage, Inc*., 135 F. Supp. 3d 332 (W.D. Pa. 2015) (granting motion to dismiss promissory estoppel claim for failure to plausibly plead an express promise); *Stilwell*, 2007 WL 2345281, at *7 (granting motion to dismiss promissory estoppel claim because "[a] best, the promise plaintiff [relied upon] is a 'broad and vague implied promise,' which is insufficient to establish the claim of promissory estoppel"); *Nabisco, Inc. v. Ellison*, No. CIV. A. 94-1722, 1994 WL 622136, at *7 (E.D. Pa. Nov. 8, 1994) (granting motion to dismiss promissory estoppel claim and holding that "[a]llowing a claim for promissory estoppel to be based on an implied promise would in effect allow a claim to be based upon the plaintiff's subjective expectations").

For example, in *Geesey*, the court dismissed a promissory estoppel claim because the alleged promise spoke to "eligibility" for certain terms rather than an express promise. 135 F. Supp. 3d at 349.  The plaintiffs inquired about modifying the terms of their loan, and a defendant informed the plaintiffs that they would not be eligible for a modification unless they were three months behind on their payments.  *Id.* at 335.  Although they were current with their payments at that time, plaintiffs intentionally defaulted on their mortgage payments for three months, only to eventually be denied the requested modification.  *Id.*  In dismissing plaintiffs' claim, the court found that although the defendant made a representation of "eligibility" for certain terms, "for the purpose of inducing Plaintiffs to rely on the representations," such "threadbare recitals" were insufficient to be an "express promise" that could withstand dismissal.  *Id.* at 349-50.

Here, like *Geesey* and the other decisions cited above, Plaintiffs have failed to plead a clear, express promise of guaranteed bonus payments.  Instead, as discussed above, Plaintiffs at best allege an optimistic subjective expectation that they would receive bonuses based on cherry-picked statements contained in various offer letters, oral and written communications, and

summaries of bonus plan documents, all of which simply mention *eligibility* for bonuses (to the extent they even mention 2018 bonuses at all).  *See supra* at 12-14.  Moreover, Plaintiffs' allegations of Aramark's past bonus payments, as a matter of law, are insufficient to support a promissory estoppel claim.  *Dugan v. Bell Tel. of Pa.*, 876 F. Supp. 713, 727 (W.D. Pa. 1994) (granting motion to dismiss promissory estoppel claim based on defendant's alleged promise not to terminate plaintiff inferred from employment policies, holding that "courts have specifically held Pennsylvania law does not recognize a cause of action based on an employee's detrimental reliance on an employer's past policies and practices").

In sum, even assuming that all of Plaintiffs' well-pled fact allegations in the Complaint are true, it is clear that they have not pled and cannot plead that Aramark provided an express promise to pay any particular bonuses to Plaintiffs or the putative class members.  This alone is grounds to dismiss Count II of the Complaint.

> **2.**     **Plaintiffs failed to plausibly plead that they took action or refrained from taking action in reliance on Aramark's alleged promise to pay bonuses.**

As a second and entirely independent basis to dismiss this cause of action, even if Plaintiffs had plausibly pled an express promise (which they did not), Plaintiffs fail to plausibly plead that they took any detrimental action or refrained from any action on account of the alleged promise of a bonus.  With regard to the second element of the promissory estoppel claim, courts have held that "any action taken in reliance on a promise must be ***detrimental*** before a plaintiff can prevail on a promissory estoppel claim."  *Ndubizu v. Drexel Univ.*, 768 F. Supp. 2d 796, 801 (E.D. Pa. 2011) (emphasis added).  Moreover, to succeed on this claim, the plaintiff must establish that he took action or refrained from action that "amounted to a substantial change of position."  *Ankerstjerne v. Schlumberger, Ltd.*, 155 F. App'x 48, 51 (3d Cir. 2005).

Here, Plaintiffs merely allege in conclusory fashion that the purported promise to pay bonuses "induce[d] bonus-eligible managers to expect that Defendant would make FY 2018 bonus payments, and, in fact, Plaintiffs harbored such expectations in good faith reliance on Defendant's conduct and representation."  SAC ¶ 66.  Thus, the only action that Plaintiffs allegedly took in response to Aramark's purported promise to pay bonuses was that they "harbored an expectation" to receive bonuses.  That is wholly insufficient to plead a promissory estoppel claim.  Indeed, if harboring an expectation that a promise would be fulfilled would be enough to assert a promissory estoppel claim, then any broken promise could establish a *prima facie* case.

Moreover, even if Plaintiffs had alleged that they continued to work for Aramark in reliance on the alleged promise to pay bonuses, continuing to perform a job for which they already were being paid is not considered "detrimental" reliance as a matter of law.  In *Ankerstjerne*, the plaintiff brought a promissory estoppel claim to recover bonuses he was allegedly owed for certain projects.  *Id.* at 155 F. App'x at 48-59.  The Third Circuit affirmed the district court's decision to dismiss the promissory estoppel claim on summary judgment because, as a matter of law, the plaintiff could not prove that he detrimentally relied on the alleged promise for bonuses.  Specifically, the Third Circuit noted that the projects the plaintiff completed were done during the normal course of his job duties, and plaintiff could not establish that he took action or abstained from action that "amounted to a substantial change of position."  *Id*. at 51-52.  Plaintiffs' promissory estoppel claims here warrant dismissal, even more so than the plaintiff's claim in *Ankerstijerne*, because here Plaintiffs do not even allege that they took any actions or abstained from *any* actions in response to the purported promises – let alone

actions that resulted in a "substantial change in position." *Id.* The Court should dismiss Count II for this additional, independent reason.

### 3.     Plaintiffs failed to plausibly plead that injustice can be avoided only through the enforcement of Aramark's alleged promise.

As a third and entirely independent basis to dismiss this cause of action, Plaintiffs fail to plausibly plead that "injustice" can be avoided only through the enforcement of Aramark's alleged promise to pay bonuses.  In the SAC, the only allegation that Plaintiffs offer to establish this third element of their promissory estoppel claim is: "Failure by this Court to enforce Defendant's promise to make FY 2018 bonus payments would cause a great injustice to Plaintiffs and the class members and an unfair financial windfall to Defendant." SAC ¶ 67. Thus, Plaintiffs merely state in conclusory fashion the third element of a promissory estoppel claim without any further factual allegations to demonstrate "injustice."  Such "a formulaic recitation of a cause of action's elements will not do," and is insufficient to plead a plausible claim for promissory estoppel. *Tyco Elecs. Corp. v. Milwaukee Elec. Tool Corp.*, No. 10-1807, 2012 WL 1205700, at *9 (M.D. Pa. Feb. 21, 2012) (granting defendant's motion to dismiss plaintiff's promissory estoppel claim because plaintiff's allegations regarding the alleged promise were "conclusory" and insufficient to state a plausible claim (citing *Twombly*, 550, U.S. at 555)).  Plaintiffs do not plead that they were denied their salaries for the work they performed. They plead only that they did not receive an annual bonus in addition to their salaries.  Nothing in the SAC supports the claim that not receiving 2018 bonuses constitutes an "injustice." Without sufficiently pleading the "avoid injustice" element, Plaintiffs' claim fails as a matter of law.  Accordingly, the Court should dismiss Count II for this additional, independent reason.

**E.      Plaintiffs Failed To Plead A Plausible Claim For Unjust Enrichment.**

Even if Pennsylvania common law regarding unjust enrichment claims somehow could apply to the entire putative nationwide claim (which it cannot), Plaintiffs failed to plead the necessary elements of unjust enrichment.

Under Pennsylvania law, a claim for unjust enrichment requires a plaintiff to plead and then prove (1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Sovereign Bank v. BJ's Wholesale Club, Inc*., 533 F.3d 162, 180 (3d Cir. 2008). Importantly, "[t]he mere fact that one party benefits from the act of another is on its own insufficient to justify restitution. . . . [t]here must also be an injustice in permitting the benefit to be retained without compensation." *Downey v. First Indem. Ins.*, 214 F. Supp. 3d 414, 430 (E.D. Pa. 2016) (citation omitted). To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must also "show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be ***unconscionable*** for the party to retain without compensating the provider." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) (emphasis added). Finally, Pennsylvania law requires for an unjust enrichment claim that "the benefit to the defendant" is one that is "substantial and obvious." *Stone & Edwards Ins. Agency Inc. v. Stumpf*, 31 Pa. D. & C.4th 462, 474 (Pa. Ct. Com. Pl. 1996) (quoting *Chesney v. Stevens*, 435 Pa. Super. 71, 78, 644 A.2d 1240, 1243 (Pa. Super Ct. 1994).

 Here, Plaintiffs have failed to plead sufficient facts that their continued employment unconscionably enriched Aramark. In support of their unjust enrichment claim, Plaintiffs allege only that they conferred a benefit on Aramark by working throughout 2018 under the subjective expectation that they would be paid bonuses and, as such, Aramark "appreciated the benefits of

such labor under inequitable circumstances."  SAC, ¶ 72.  However, Plaintiffs do not and cannot

allege that they were paid nothing for their employment with Aramark.  To the contrary,

Plaintiffs and their putative class members were well-paid employees, many of whom earned

base salaries over $100,000 per year.  *See, e.g.*, SAC, Ex. A (showing Plaintiff Lacher earned a

starting base salary of $128,000 in 2016).

When employees simply continue to perform their work duties to the best of their ability

and are paid wages for that work, courts have held as a matter of law that the employers have not

received any benefit unjustly – even if the employer fails to provide extra incentive or bonus

compensation as expected.  *See, e.g.*, *Bowden v. DB Schenker*, 693 F. App'x 157, 160 (3d Cir.

2017) (affirming motion to dismiss unjust enrichment claim brought by employee seeking bonus

payment); *Brzozowski v. Pa. Tpk. Comm'n*, No. CV-15-2339, 2018 WL 6249849, at *13 (E.D.

Pa. Nov. 28, 2018) (granting motion to dismiss plaintiff's unjust enrichment claim premised on

defendant's failure to provide a raise which the employee expected after completing various

training programs, finding that the facts alleged, even if true, failed to show that the employer

was unjustly enriched, and holding that "an employee must allege he did more than work to the

best of his abilities for defendant as he was engaged to do");  *Herbst v. Gen. Acc. Ins. Co.*, No.

97-8085, 1999 WL 820194, at *9 (E.D. Pa. Sept. 30, 1999) (granting summary judgment in favor

of defendant regarding plaintiff's claim of unjust enrichment where plaintiff received his salary

but no bonus, concluding that "Plaintiff has not shown that he did anything more than work to

the best of his abilities for defendant as he was engaged to do" and thus denial of any anticipated

bonus was not inequitable as a matter of law).

In *Bowden*, the Third Circuit affirmed dismissal of a plaintiff's unjust enrichment claim

where the plaintiff was performing the duties of her job as a salaried employee and thus the

decision to not pay her any additional compensation for contributing to the improvement of her workplace was not inequitable. 693 F. App'x at 160. Although the Third Circuit recognized that the plaintiff added value and developed workplace efficiencies during her employment, it reasoned that "Bowden was aptly compensated for her work during the term of her employment, and it is not 'unconscionable' that [her employer] benefits from the work of its employees." *Id.* As such, there was nothing inequitable about the employer's decision to deny Bowden any wages above her base salary, and her unjust enrichment claim failed as a matter of law. *Id*.

Similarly, in *Herbst*, plaintiff's compensation package included a salary and a potential bonus. 1999 WL 820194 at *5. The bonus payment was discretionary and subject to various eligibility requirements. *Id.* at *6. After plaintiff's employment terminated and he thus was no longer eligible for the discretionary bonus, he demanded the bonus through the theory of unjust enrichment. *Id.* at *24. The court granted summary judgment in favor of the employer because, as a matter of law, plaintiff had not shown that defendant received any benefit unjustly; the plaintiff was still compensated for the work for which he was engaged. *Id.* at *27.

Here, too, Plaintiffs do not and cannot allege that they and the individuals they seek to represent were not paid the full salaries promised for their duties. At most, the SAC alleges that some or all of these individuals were "eligible" for bonuses on top of their salaries and expected them, but did not receive them. Like in *Herbst* and *Bowden*, Plaintiffs offer no allegations to support any argument that it would be unjust for Aramark to retain the benefit of their work where it is undisputed that they and those they seek to represent received their salaries for that work. In sum, Plaintiffs have failed to plead a plausible unjust enrichment claim and the Court should dismiss Count III of the Complaint as well for this additional reason.

**F.      Plaintiffs Failed To Plead A Claim For Breach Of Contract Accompanied By A Fraudulent Act Under The Heightened Pleading Requirements of Rule 9(b).**

A claim for breach of contract accompanied by a fraudulent act under South Carolina law requires a plaintiff to plead and then prove that a defendant: (1) breached a contract; (2) committed the breach with fraudulent intent; and (3) committed a fraudulent act accompanying the defendant's breach.  *Connor v. City of Forest Acres,* 348 S.C. 454, 465–66, 560 S.E.2d 606, 612 (S.C. 2002); *Harper v. Ethridge*, 290 S.C. 112 (Ct. App. 1986).  The Supreme Court of South Carolina has defined a "fraudulent act" as "any act characterized by dishonesty in fact or unfair dealing." *Id.* at 466, 560 S.E.2d 606.  Moreover, "[i]t is well-established that the fraudulent act must be separate and apart from the breach."  *Ring v. The Sports Auth., Inc.*, No. CIVA6:04-21848, 2006 WL 83047, at *7 (D.S.C. Jan. 10, 2006).

To establish the fraud elements of this claim, courts have required plaintiffs to satisfy the heightened pleading standard set forth in Fed. R. Civ. P. 9(b).  *See, e.g.*, *Roberts v. Ebay Inc.*, No. 14-4904, 2017 WL 525925, at *3 (D.S.C. Feb. 9, 2017) (granting motion to dismiss breach of contract accompanied by a fraudulent act claim, and applying Rule 9(b)'s heightened pleading requirements specifically to the fraud elements of the claim, but applying Rule 12(b)(6) overall). Rule 9(b) requires plaintiffs to plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Neuman v. Levan*, CIV. A. 8:08-03418, 2009 WL 1856569, at *3 (D.S.C. June 26, 2009) (granting defendant's motion to dismiss plaintiff's claim for breach of contract accompanied by a fraudulent act because plaintiffs failed to allege fraud with particularity). "Thus, the plaintiffs must demonstrate the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 379 (4th Cir. 2008).

Here, Plaintiffs' claim for breach of contract accompanied by a fraudulent act fails as a matter of law because (1) Plaintiffs failed to plead a breach of contract under South Carolina law, (2) Plaintiffs failed to plead specific facts to demonstrate that Aramark breached any purported agreement with fraudulent intent, and (3) Plaintiffs failed to plead that Aramark engaged in any act of alleged fraud *separate* from the alleged breach of contract.  Each of these is itself independent grounds to dismiss Count IV.

### 1.	Plaintiffs failed to plead a breach of contract.

To recover for a breach of contract in South Carolina, the plaintiff must prove: (1) a binding contract entered into by the parties; (2) a breach or unjustifiable failure to perform the contract; and (3) damage suffered by the plaintiff as a direct and proximate result of the breach. *Tomlinson v. Mixon*, 367 S.C. 467, 626 S.E.2d 43, 49 (S.C. 2006).  As discussed above, Plaintiffs cannot plausibly plead a breach of contract claim because they cannot plead the existence of a contract with sufficiently definite terms.[10]  *See supra* Section II.C.  Because a breach of contract is a predicate act for a breach of contract accompanied by a fraudulent act claim, the Court can and should dismiss Count IV of the Complaint for this reason without even reaching the remaining alternative arguments.  *See Ramsey v. Vanguard Servs.*, No. 8:07-CV-00265, 2007 WL 904526, at *2 (D.S.C. Mar. 22, 2007) (granting defendant's motion to dismiss plaintiff's claim for breach of contract accompanied by a fraudulent act because plaintiff could not plead the existence of an enforceable employment contract).

---

[10] District courts in South Carolina have applied the Rule 12(b)(6) standard for the predicate breach of contract claim necessary for a breach of contract accompanied by a fraudulent act claim, but the fraud elements of such a claim must be plead under Rule 9(b). *Roberts*, 2017 WL 525925, at *3.

    **2.**  **Plaintiffs failed to plead specific facts that would establish that Aramark breached any contract with fraudulent intent.**

Even assuming Plaintiffs have pled a breach of contract, which they have not, the Court should still dismiss Count IV for the independent reason that they have not pled specific facts to demonstrate that Aramark acted with fraudulent intent under Rule 9(b)'s heightened pleading standard.  In support of their allegations of fraud in Count IV, Plaintiffs allege that Aramark "acted with fraudulent intent by (a) misleading Lacher and others into believing that the FY 2018 bonus payments would be delayed from December 2018 until February 2019 but eventually paid and (b) moving the accrued FY 2018 bonus payment liability onto the company's bottom line at the very end of the fiscal year to inflate company earnings." SAC ¶ 76.

These allegations fall far short of demonstrating the "'who, what, when, where, and how' of the alleged fraud" required by Rule 9(b).  *Kellogg Brown*, 525 F.3d at 379.  Specifically, there are no facts regarding specifically who misled Lacher or the thousands of unidentified others, what statements were said to mislead them, what knowledge the persons making the allegedly misleading statements had when making the statements, where those statements were made, or how Plaintiffs or others were misled.  And as set forth *supra* at 12-14, it is simply untrue that Aramark guaranteed that bonuses ultimately would be paid to all, given the absence of express commitments and limited assurance of mere "eligibility."

It is entirely unclear what Plaintiffs allege Aramark did in the allegation in subsection "(b)" above, let alone how such alleged conduct would demonstrate fraudulent intent.  Plaintiffs offer no explanation whatsoever (because there is none) for how Aramark's financial reporting to the public would demonstrate fraudulent intent in its communications with the Plaintiffs and putative class members.  Courts in South Carolina have dismissed breach of contract accompanied by fraudulent intent claims based on similar cursory allegations of being "misled."

26

*See, e.g.*, *Smith v. Nationstar Mortg., LLC*, No. 15-CV-0888, 2015 WL 13759742, at *2 (D.S.C. Aug. 3, 2015) (granting motion to dismiss breach of contract accommodated by a fraudulent act claim for failure to meet Rule 9(b)'s pleading requirements, where plaintiff's sole premise to demonstrate fraudulent intent was her allegation that defendant misled plaintiff into thinking it would transfer her mortgage to another company smoothly but then failed to do so); *Neuman*, 2009 WL 1856569, at *3 (holding that plaintiff's cursory allegations that "Defendants engaged in false, misleading, and deceptive acts" could not satisfy Rule 9(b) because they lacked particularity of the "time, place, and contents of the false representations"). Count IV should be dismissed for this second, independent basis as well.

### 3. Plaintiffs failed to plead specific facts that would establish that Aramark engaged in any fraudulent act separate from the alleged breach of contract.

Even assuming Plaintiffs have pled a plausible breach of contract and sufficiently pled that Aramark acted with fraudulent intent, which they have not, the Court still should dismiss Count IV for the independent reason that Plaintiffs have not pled that Aramark engaged in any fraudulent act separate from the alleged breach. *See Neuman*, 2009 WL 1856569, at *3 (D.S.C. June 26, 2009) (holding that dismissal of breach of contract accompanied by a fraudulent act claim should be granted also because plaintiffs failed to plead a separate act of fraud accompanying the breach "beyond Defendant's promise to perform and subsequent failure to perform"); *Ring*, 2006 WL 83047, at *7 (same).

In *Neuman*, the plaintiff brought a breach of contract accompanied by a fraudulent act claim based on a real estate transaction that defendant refused to close. 2009 WL 1856569, at *1. Specifically, the plaintiff alleged that defendants executed a contract to sell property to plaintiff, promised to follow through on the contract, but then refused to close the transaction. *Id.* The fraudulent acts alleged by the plaintiff were the defendants' continual promises to

complete the sale, which plaintiff claimed were knowingly false, misleading, and deceptive because the defendant then refused to follow through. *Id.* at \*2-4.  The court ultimately granted the defendants' motion to dismiss, holding that "the fact that Defendants made a promise to perform under the Agreement and then failed to perform does not suggest a fraudulent act in and of itself . . . . [i]f it did, every breach of contract where a party fails to perform on a promise would become actionable as a breach of contract accompanied by a fraudulent act." *Id.* at \*3.

In this case, Plaintiffs' claim fails for the same reason.  The SAC asserts that by allegedly promising bonus payments and then failing to provide them, Aramark defrauded Plaintiffs. However, the act of the alleged breach (not paying the bonuses as expected) and the alleged fraud are one and the same.  Thus, the Court should dismiss Count IV for this reason as well.

### G.   Plaintiffs Failed To Plead A Plausible Claim For A Violation Of The Pennsylvania Wage Payment and Collection Law.

Plaintiffs' claim for violation of the Pennsylvania Wage Payment and Collection Law should be dismissed because the PWPCL is only a mechanism to enforce contractual obligations and, as established above, Plaintiffs have not pled facts to plausibly demonstrate an express contractual obligation to pay bonuses.

The PWPCL "provides employees a statutory remedy to recover wages and other benefits that are ***contractually due to them***."  *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997) (emphasis added).  Specifically, the PWPCL requires an employer to pay employees all wages earned during a pay period within fifteen days of the end of such pay period.[11]  43 P.S. §260.3(a). However, the PWPCL "does not create a right to compensation."  *De Asencio v. Tyson Foods, Inc.*,

---

[11] PWPCL § 3(a) provides, in part, that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employees on regular paydays designated in advance by the employer." 43 Pa. Stat. § 260.3(a).

342 F.3d 301, 309 (3d Cir. 2003) (citation and internal quotations omitted).  Rather, it is well-established that the PWPCL merely provides a statutory remedy for recovery where an employer has breached an independent contractual obligation to pay earned wages.  *See De Asencio*, 342 F.3d at 309 ("[The PWPCL] provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages.  The contract between the parties governs in determining whether specific wages are earned.") (citation and internal quotations omitted).

Thus, because Plaintiffs fail to plausibly plead the existence of any express contract that guaranteed bonus payments, *see supra* at 12-14, Plaintiff's PWPCL claim fails and the Court should dismiss Count VIII as well.  *See Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 470 (E.D. Pa. 2013) ("Relief under the [P]WPCL is implausible without [the] existence of a contract."); *Panetta v. SAP Am., Inc.*, No. 05-4511, 2007 WL 1001889, at *7 (E.D. Pa. Mar. 30, 2007) (dismissing plaintiff's PWPCL claim because his breach of contract claim for earned commission wages failed as a matter of law).

### H.     Plaintiffs Failed To Plead A Plausible Claim For A Violation Of The Massachusetts Payment of Wages Act.

Plaintiffs' claim under the Massachusetts Payment of Wages Act fails because the MPWA does not apply to bonus payments.  To proceed with a claim for non-payment of wages under the MPWA, Plaintiffs must establish that they (1) were employees under the statute; (2) the payment sought constitutes a "wage" under the statute; (3) the "wage" sought was "definitely determined" and "due and payable," and (4) Aramark violated the MPWA by not timely paying the earned amount.  Mass. Gen. Laws Ann. ch. 149, § 148. The MPWA does not define "wages" other than to state that wages include "holiday and vacation payments" due under an agreement, as well as "commissions" that are "definitely determined" and "due and payable to the employee." *Id*.  The MPWA notably makes no mention of bonuses, although the legislature

could have referenced bonuses if it wished and it did specify other forms of compensation subject to the statute.  Here, Plaintiffs' MPWA claim fails because the "bonus" that they seek to recover is not a type of wage covered by the MPWA.

The Supreme Court of Massachusetts has declined to adopt a broad definition of "wages" under the MPWA because the purpose of the MPWA is "to prevent the unreasonable detention of [weekly] wages." *See Weems v. Citigroup Inc.*, 453 Mass. 147, 154, 900 N.E.2d 89, n.10 (Mass. 2009) (distinguishing the narrow purpose of "the weekly wage act" (i.e., MPWA) from broader remedial statutes such as the Massachusetts Equal Pay Act in which the term "wages" has been interpreted as encompassing all potential sources of pay); *see also Prozinski v. Ne. Real Estate Servs., LLC*, 59 Mass. App. Ct. 599, 603 (Mass. App. Ct. 2003) ("We have construed the [W]age [A]ct narrowly.").  Specifically, in *Weems*, the Supreme Court of Massachusetts answered a certified question from the District of Massachusetts regarding whether a forfeiture provision of a discretionary stock bonus program would violate the MPWA because the provision would cause employees to forfeit restricted stock units previously awarded to them. The Court held that the bonuses at issue would not represent "wages earned" under the MPWA. *See Weems*, 453 Mass. at 156-58.

Following the Massachusetts Supreme Court's lead, courts routinely dismiss MPWA causes of action seeking various types of allegedly unpaid bonuses.  *See, e.g.*, *Weiss v. DHL Express, Inc.*, 718 F.3d 39, 42 (1st. Cir. 2013) (dismissing MPWA claim on summary judgment and holding that a discretionary bonus is not a "wage" under the MPWA's narrow definition of the term); *Lelio v. Marsh USA, Inc.*, No. CV-15-10335, 2017 WL 3494214, at *9 (D. Mass. Aug. 14, 2017) (granting motion to dismiss and holding that cash incentive bonus award was outside the scope of the MPWA pursuant to *Weems*); *Young v. Fidelity Research & Analysis*, No. 10-

2434, 2011 WL 12546380, at \*12-13 (Mass. Super. Ct. Aug. 30, 2011) (granting motion to dismiss MPWA claim based on annual cash incentive bonus, holding that such bonus payments are not covered by the MPWA); *Sheedy v. Lehman Bros. Holdings Inc*., No. CIV. A. 11-11456, 2011 WL 5519909, at \* 4 (D. Mass. Nov. 14, 2011) (dismissing MPWA claim based on an unpaid cash signing bonus and stating that "[t]he law is clear that incentive or other bonus compensation is outside the scope of the Wages Act"); *Doucot v. IDS Scheer, Inc.*, 734 F. Supp. 2d 172 (D. Mass. 2010) (granting motion to dismiss MPWA claim based on alleged unpaid bonuses because "bonuses are not 'wages' protected by the MA Wage Act").

Plaintiffs' MPWA claim is expressly premised on the allegation that Aramark "fail[ed] to pay Doherty and other Massachusetts class members their FY 2018 ***bonuses***." SAC ¶ 105 (emphasis added). Similar to the bonuses ineligible for recovery under the MPWA in *Weems*, the bonuses in this case were contingent on numerous factors such as adjusted operating income, revenue, individual objectives (including operations, growth, finance, and engagement metrics), individual performance, district team performance, and region team performance, which were all also subject to the terms and conditions of the bonus plans as "interpreted and administered" by Aramark. *See* SAC, Ex. D-E. Moreover, employees had to have worked at Aramark for at least six months and still be active at Aramark to be ***eligible*** for participating in the bonus plans. *Id.* The same is true of the bonuses in the aforementioned decisions that fell outside of the MPWA. *Weiss*, 718 F.3d at 41-43; *Young*, 2011 WL 12546380, at \*12-13.

Accordingly, because Plaintiffs' MPWA claim demands unpaid bonuses that are not recoverable under the MPWA, the Court should dismiss Count XI.

I.      **Plaintiffs' Claims In Counts XII and XIII Under California Labor Code §
        204 And The California UCL Fail As A Matter Of Law.**

Counts XII and XIII of the Second Amended Complaint allege violations of California

Labor Code § 204 and the California UCL.  SAC ¶¶ 109-112.  These claims fail as a matter of

law for two reasons.

First, it is well-established that there is no private right of action under Labor Code § 204.

*See Silva v. AvalonBay Cmtys., Inc.*, No. 15-4157, 2015 WL 11422302, at *9 (C.D. Cal. Oct. 8,

2015) (granting defendant's motion to dismiss plaintiff's Section 204 cause of action because no

private right of action exists under Section 204) (citing *Young v. ABM Sec. Servs.*, 905 F.2d

1541, at *5 (9th Cir. 1990)).  Under California law, "[a]doption of a regulatory statute does not

automatically create a private right to sue for damages resulting from violations of the statute."

*Vikco Ins. Serv. Inc. v. Ohio Indem. Co.*, 70 Cal.App.4th 55, 62-63 (1999).  A private right of

action exists only if the statute – in "clear understandable, unmistakable terms" – indicates an

intent to create such a right. *Id.*  As a result, courts have consistently held that Section 204

creates no private right of action and dismissed Section 204 claims for that reason.  *See, e.g.,*

*Dawson v. HITCO Carbon Composites, Inc.*, No.16-7337, 2017 WL 7806618, at *5 (C.D. Cal.

Jan. 20, 2017) (granting motion to dismiss Section 204 cause of action because "[the Labor

Code] statute does not grant employees a private right of action against employers who violate

Section 204); *Jeske v. Maxim Healthcare Servs., Inc.*, 2012 WL 78242, at *4–5 (E.D. Cal. Jan.

10, 2012) (granting defendant's motion to dismiss plaintiff's claim for unpaid wages under

Section 204 because when there is a clear expression of legislation, "courts should not expand

the coverage of the statute to subsume other remedies") (internal quotations omitted); *Johnson v.*

*Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011) (holding that Section 204

did not create a private right of action because "[t]here is nothing in section 204 or 210 that

indicates, in 'clear understandable, unmistakable terms' that a private right of actions exists for violations of section 204").  Without a private cause of action available under Section 204, Count XII fails as a matter of law.

Second, Plaintiffs' UCL claim fails as a matter of law because it is entirely derivative of Plaintiffs' flawed Section 204 claim.  A UCL claim "borrows" violations from other laws by treating them as unlawful practices that the UCL makes independently actionable. *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).  Here, Plaintiffs' UCL claim purports to "borrow" from the California Labor Code § 204.  *See* SAC ¶ 112.  Where a plaintiff cannot state a claim under the "borrowed" law, however, he or she cannot state a UCL claim premised on that law.  *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) (granting motion to dismiss  UCL counterclaim because "[a] UCL claim must be dismissed if the [complaining party] has not stated a claim for the predicate acts upon which he bases the claim"); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1190-91 (N.D. Cal. 2009) (granting motion to dismiss  UCL cause of action because court dismissed "all of Plaintiff's predicate violations"); *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal.App.4th 1050, 28 Cal. Rptr. 3d 933, 938 (2005) (granting defendant's motion to strike and thereby dismissing plaintiff's UCL claim because "[i]f the [underlying] claim is dismissed, then there is no 'unlawful' act upon which to base the derivative [UCL] claim").  Accordingly, because Plaintiffs' claims under Labor Code Section 204 and the UCL fail as a matter of law, the Court should dismiss Counts XII and XIII.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Aramark respectfully requests that the Court grant its Motion to Dismiss Partially the Complaint and dismiss Counts I-IV, VIII, and XI-XIII.


Dated: May 15, 2019                    MORGAN, LEWIS & BOCKIUS LLP
          Philadelphia, Pennsylvania          By: */s/ Michael J. Puma*_____
                                                        Michael J. Puma
                                                        Eric C. Kim
                                                    1701 Market Street
                                                    Philadelphia, PA  19103
                                                    Tel: 215.963.5000
                                                    Fax: 215.963.5001
                                                    Email: michael.puma@morganlewis.com
                                                             eric.kim@morganlewis.com
                                                    *Counsel for Defendant*