**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HENRY J. LACHER *et al.*, on behalf of
themselves and others similarly
situated,

               Plaintiffs,

      v.

ARAMARK CORPORATION,

             Defendant.

No. 2:19-cv-00687-JP

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO STRIKE ALL CLASS ALLEGATIONS
<u>IN THE SECOND AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

Page(s)

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     RELEVANT BACKGROUND ......................................................................... 3

III.    ARGUMENT ................................................................................................... 5

        A.      The Court Properly May Strike Plaintiffs' Class Allegations Or Deny
                Class Certification At The Outset Of This Litigation. ............................ 5

        B.      The Court Should Strike Plaintiffs' Nationwide Claims In Counts I-III
                Because They Require An Extensive Choice-of-Law Analysis That
                Precludes Class Certification ................................................................. 7

        C.      The Court Should Strike Plaintiffs' Nationwide Claims in Counts I-III
                Because The Variances In The State Laws That Could Apply To Those
                Claims Preclude Certification Under Federal Rules 23(a) and 23(b) ................ 11

                1.      Plaintiffs' breach of contract claim in Count I is incompatible with
                        class treatment because of the variance among the states' laws. ............. 11

                2.      Plaintiffs' promissory estoppel claim in Count II is incompatible
                        with class treatment because of the variance among the states' laws ...... 16

                3.      Plaintiffs' unjust enrichment claim in Count III is incompatible
                        with class treatment because of the variance among the states' laws ...... 19

        D.      The Individualized Inquiries Inherently Necessary To Prove Counts I-III
                Also Preclude Certification. .................................................................. 22

                1.      Plaintiffs' breach of contract claim inherently requires
                        individualized inquiries that preclude class certification ........................ 22

                2.      Plaintiffs' promissory estoppel claim inherently requires
                        individualized inquiries that preclude class certification ........................ 24

                3.      Plaintiffs' unjust enrichment claim inherently requires
                        individualized inquiries that preclude class certification ........................ 27

        E.      The Individualized Inquiries Inherently Necessary To Prove Counts IV-
                XIII Also Preclude Certification Of Plaintiffs' Statewide Subclasses ................ 29

                1.      Plaintiff's claim for breach of contract accompanied by a
                        fraudulent act under South Carolina law in Count IV requires
                        individualized inquiries that preclude certification .................................. 29

i

## <u>TABLE OF CONTENTS</u>

**Page(s)**

2.    Plaintiffs' Pennsylvania Wage Payment and Collection Law ("PWPCL") claim in Count VIII requires proof of a contract, which in turn requires individualized inquiries that preclude certification ............................................................................................... 31

3.    Plaintiffs' remaining state law claims in Counts V, VI, VII, IX, X, XI, XII, and XIII require individualized inquiries that preclude certification ............................................................................................... 32

IV.    CONCLUSION ............................................................................................... 33

# TABLE OF AUTHORITIES

Page(s)

CASES

*Amicas, Inc. v. GMG Health Sys.*,
  676 F.3d 227 (1st Cir. 2012) .................................................................12

*Barabin v. Aramark Corp.*,
  210 F.R.D. 152 (E.D. Pa. 2002), *aff'd*, No. 02-8057, 2003 WL 355417 (3d
  Cir. Jan. 24, 2003) .................................................................................5

*Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*,
  No. 12-929, 2015 WL 401443 (W.D. Pa. Jan. 28, 2015) ........................5

*Bennett v. Itochu Int'l, Inc.*,
  682 F. Supp. 2d 469 (E.D. Pa. 2010) ....................................................25

*Bowers v. Jefferson Pilot Fin. Ins. Co.*,
  219 F.R.D. 578 (E.D. Mich. 2004) ........................................................15

*Burton v. GMC*,
  No. 1:95-CV-1055, 2008 WL 3853329 (S.D. Ind. Aug. 15, 2008) ........18

*Carter v. PJS of Parma, Inc.*,
  No. 15-1545, 2016 WL 3387597 (N.D. Ohio June 20, 2016) ................27

*Coker's Mobile Home Plaza, Inc. v. ITT Commercial Fin. Corp.*,
  900 F.2d 250 (4th Cir. 1990) ................................................................30

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ...........................................................................7

*Comer v. Life Ins. Co. of Ala.*,
  No. C/A 0:08-228-JFA, 2010 WL 233857 (D.S.C. Jan. 14, 2010).........31

*Connor v. City of Forest Acres*,
  348 S.C. 454, 560 S.E.2d 606 (S.C. 2002) ...........................................29

*Cowit v. CitiMortgage, Inc.*,
  No. 12-869, 2013 WL 940466 (S.D. Ohio Mar. 8, 2013)........................18

*Cuming v. S.C. Lottery Comm'n*,
  No. 3:05-CV-03608-MBS, 2008 WL 906705 (D.S.C. Mar. 31, 2008) ...31

*Danvers Motor Co. v. Ford Motor Co.*,
  543 F.3d 141 (3d Cir. 2008)....................................................................7

*Dawson v. Dovenmuehle Mortg., Inc.*,
  214 F.R.D. 196 (E.D. Pa. 2003)............................................................10

## TABLE OF AUTHORITIES

**Page(s)**

*Driver v. AppleIllinois, LLC,*
    265 F.R.D. 293 (N.D. Ill. 2010)..........................................................33

*Elwell v. SAP Am., Inc.,*
    No. No. 18-CV-0489, 2019 WL 1114898 (E.D. Pa. Mar. 8, 2019)........................................17

*Emergency Assoc. of Tampa, P.A. v. Sassano,*
    664 So.2d 1000 (Fla. Dist. Ct. App. 1995) ............................................14

*Emig v. Am. Tobacco Co.,*
    184 F.R.D. 379 (D. Kan. 1998)..........................................................10

*Enter. Leasing Corp. v. Shugart Corp.,*
    231 Cal. App. 3d 737, (Cal. Ct. App. 1991)……………………………………………….... 20

*Estate of Kaila v. Kaihlan,*
    94 Cal. App. 4th 1122 (Ca. App. 2002) ................................................14

*Frazier v. PJ Iowa, L.C.,*
    337 F. Supp. 3d 848 (S.D. Iowa 2018) ................................................33

*Freeman Indus., LLC v. Eastman Chem. Co.,*
    175 S.W.3d 512 (Tenn. 2005)..........................................................20

*Frigillana v. Frigillana,*
    266 Ark. 296, 584 S.W.2d 30 (Ark. 1979) ............................................20

*Frost Nat'l Bank v. Burge,*
    29 S.W.3d 580 (Tex. Ct. App. 2000) ..................................................12

*Gen. Insulation Co. v. Eckman Constr.,*
    992 A.2d 613 (N.H. 2010) ..............................................................19

*Georgine v. Amchem Prod., Inc.,*
    83 F.3d 610 (3d Cir. 1996).............................................................9

*Good v. Ameriprise Fin.,*
    248 F.R.D. 560 (D. Minn. 2008).......................................................24

*Grandalski v. Quest Diagnostics,*
    767 F.3d 175 (3d Cir. 2014).........................................................27, 28, 29

*Gustafson v. BAC Home Loans Servicing, LP,*
    294 F.R.D. 529 (C.D. Cal. 2013) ...................................................15, 23

*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga,*
    96 Cal. Rptr. 3d 813 (Cal. Ct. App. 2009) ..........................................12

## TABLE OF AUTHORITIES

**Page(s)**

*Haggard Drilling, Inc. v. Greene*,
   195 Neb. 136, 236 N.W.2d 841 (Neb. 1975) ........................................................20

*Hammersmith v. TIG Ins. Co.*,
   480 F.3d 220 (3d Cir. 2007) ..................................................................................8

*Harper v. Ethridge*,
   290 S.C. 112 (Ct. App. 1986) ...............................................................................29

*Hightower v. Wells Fargo Bank, N.A.*,
   No. CV 17-04119, 2018 WL 1518616 (E.D. Pa. Mar. 28, 2018) .....................5, 6

*Huffman v. Town of La Plata*,
   No. CIV.A. DKC 2004-2833, 2005 WL 1038854 (D. Md. May 4, 2005) .............17

*In re Actiq Sales & Mktg. Practices Litig.*,
   307 F.R.D. 150 (E.D. Pa. 2015) ............................................................................21

*In re Am. Med Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ................................................................................11

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
   288 F.3d 1012 (7th Cir. 2002) ..............................................................................11

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
   No. CIV.A. 03-4558, 2012 WL 379944 (D.N.J. Feb. 6, 2012) .............................28

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ..........................................................................20

*In re Sears, Roebuck & Co.*,
   Nos. 05-C-4742/2623, 2006 WL 3754823 (N.D. Ill. 2006) .................................21

*InCompass IT, Inc. v. XO Commc'ns Servs.*,
   719 F.3d 891 (8th Cir. 2013) ................................................................................18

*Inoff v. Craftex Mills, Inc.*,
   No. 06-3675, 2007 WL 4355385 (E.D. Pa. Dec. 11, 2007) ....................................8

*Jarosz v. St. Mary Med. Ctr.*,
   No. CIV.A. 10-3330, 2014 WL 4722614 (E.D. Pa. Sept. 22, 2014) .....................31

*Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Exp. (USA), Inc.*,
   No. 08-CV-761C, 2011 WL 815209 (W.D.N.Y. Mar. 2, 2011) ............................15

*Jones v. Am. Gen. Life & Accident Ins. Co.*,
   213 F.R.D. 689 (S.D. Ga. 2002) ...........................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

*Katterman Trucking, Inc. v. Laidlaw*,
 No. 199283, 1998 WL 1997525 (Mich. Ct. App. Jan. 23, 1998) ...........................................18

*Kilpatrick v. Kilpatrick*,
 660 So.2d 182 (La. App. 1995)........................................................................................20

*Lackner v. Glosser*,
 892 A.2d 21 (Pa. Super. Ct. 2006)...........................................................................12, 22

*Lawson v. Life of the S. Ins. Co.*,
 286 F.R.D. 689 (M.D. Ga. 2012) ............................................................................15, 16

*Lisa v. Saxon Mortg. Servs., Inc.*,
 No. 11-4586, 2016 WL 5930846 (E.D. Pa. Oct. 11, 2016) .......................................6

*Lopes v. Commonwealth*,
 811 N.E.2d 501 (Mass. 2004) ..........................................................................................19

*Low v. Honolulu Rapid Transit Co.*,
 50 Haw. 582, 445 P.2d 372 (1968) ...............................................................................14

*Main St. Landing, L.L.C. v. Lake St. Assoc., Inc.*,
 892 A.2d 931 (Vt. 2006) ....................................................................................................14

*Marcus v. BMW of N. Am., LLC*,
 687 F.3d 583 (3d Cir. 2012)...............................................................................................7

*Martin v. Ford Motor Co.*,
 292 F.R.D. 252 (E.D. Pa. 2013).................................................................................6, 13

*Merex A.G. v. Fairchild Weston Sys., Inc.*,
 29 F.3d 821 (2d Cir. 1994).................................................................................................18

*Midwest Grocery Co. v. Danno*,
 172 N.E.2d 648 (Ill. App. 1961) .....................................................................................14

*Molo Oil Co. v. River City Ford Truck Sales*,
 578 N.W.2d 222 (Iowa 1998) ...........................................................................................12

*Muehlbauer v. GMC*,
 No. 05-C-2676, 2009 WL 874511 (N.D. Ill. Mar. 31, 2009) .................................21

*Nat'l Boulevard Bank of Chi. v. Makens*,
 370 N.W.2d 183 (S.D. 1985) ............................................................................................14

*New Concept Constr. Co., Inc. v. Krirbyvill Consol. Indep. Schl. Dist.*,
 119 S.W.3d 468 (Tex. Ct. App. 2003) ...........................................................................14

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

*Nimrod Mktg. (Overseas), Ltd., v. Texas Energy Inv. Corp.*,
    769 F.2d 1076 (5th Cir. 1985) ........................................................................18

*Osborne-Davis Transp. Co. v. Mothers Work, Inc.*,
    3 Pa. D. & C. 5th 53 (Pa. C.P. 2008) ............................................................18

*Panetta v. SAP Am., Inc.*,
    No. CIV.A. 05-4511, 2006 WL 924996 (E.D. Pa. Apr. 6, 2006) .............................31

*Parker v. Bennett*,
    231 S.E.2d 10 (N.C. App. 1977)......................................................................14

*Parsons v. Phila. Parking Auth.*,
    No. CV-13-0955, 2016 WL 538215 (E.D. Pa. Feb. 11, 2016) ...............................28

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..................................................................................8, 9

*Pop's Pancakes, Inc. v. NuCO2, Inc.*,
    251 F.R.D. 677 (S.D. Fla. 2008)....................................................................24

*Powers v. Lycoming Engines*,
    328 F. App'x 121 (3d Cir. 2009) ...........................................................9, 10, 11

*Rapp v. Green Tree Servicing, Ltd. Liab. Co.*,
    302 F.R.D. 505 (D. Minn. 2014).....................................................................15

*Rexnord Holdings v. Bidermann*,
    21 F.3d 522 (2d Cir. 1994).............................................................................12

*Richardson Hosp. Auth. v. Duru*,
    387 S.W.3d 109 (Tex. App. Ct. 2012) ..............................................................19

*Ring v. The Sports Auth., Inc.*,
    No. CIV.A.6:04-21848, 2006 WL 83047 (D.S.C. Jan. 10, 2006) ..........................30

*Ritti v. U-haul Int'l Inc.*,
    No. 05-4182, 2006 WL 1117878 (E.D. Pa. Apr. 26, 2006).....................................10

*River's Edge Pharm., LLC v. Gorbec Pharm. Servs.*,
    No. 1:10-CV-991, 2012 WL 1439133 (M.D.N.C. Apr. 25, 2012) .........................17

*Rowell v. Voortman Cookies, Ltd.*,
    No. 02-C-0681, 2005 WL 1026715 (N.D. Ill. Apr. 27, 2005)................................26

*Ruiz v. Citibank, N.A.*,
    93 F. Supp. 3d 279 (S.D.N.Y. 2015)................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

*Sateriale v. Rj Reynolds Tobacco Co.*,
No. 2:09-CV-08394, 2014 WL 7338877 (C.D. Cal. Dec. 19, 2014) ...................................... 26

*Schnall v. AT&T Wireless Servs., Inc.*,
171 Wash. 2d 260, 259 P.3d 129 (Wa. 2011) .......................................................... 15

*Search, Inc. v. Fleming Steel Co.*,
787 A.2d 988 (Pa. Super. Ct. 2001) ................................................................. 20, 27

*Sikes v. Teleline, Inc.*,
281 F.3d 1350 (11th Cir. 2002) ...................................................................... 11

*Simon v. National Farmers Org., Inc.*,
829 P.2d 884 (Kan. 1992) ............................................................................ 14

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*,
493 N.W.2d 137 (Minn. App. 1992) .................................................................. 20

*Spencer v. Hartford Fin. Servs. Grp. Inc.*,
256 F.R.D. 284 (D. Conn. 2009) ...................................................................... 21

*State v. Tenet Healthcare Corp.*,
420 F. Supp. 2d 1288 (S.D. Fla. 2005) ............................................................... 19

*Stewart v. McChesney*,
444 A.2d 659 (Pa. 1982) ............................................................................. 14

*Thompson v. Bayer Corp.*,
No. 4:07-00017, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009) ......................................... 21

*Trustmark Ins. Co. v. Bank One, Ariz., N.A.*,
202 Ariz. 535 (2002) ................................................................................. 20

*Turkovich v. APC Capital Partners*,
259 F. Supp. 2d 314 (D. Vt. 2002) ................................................................... 17

*Van Der Molen v. Wash. Mut. Fin., Inc.*,
835 N.E.2d 61 (Ill. App. Ct. 2005) ................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................... 6

*Walney v. SWEPI LP*,
No. CIV.A.13-102, 2015 WL 5333541 (W.D. Pa. Sep. 14, 2015) ......................... 25, 26, 28

*Weissman v. Seiyu, Ltd.*,
No. 98 Civ. 6976 (HB), 2000 WL 42205 (S.D.N.Y. Jan. 14, 2000) ...................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

*Witt v. Jones*,
   111 Idaho 165 (Id. 1986) ...........................................................................20

*Yarger v. ING Bank, Fsb*,
   285 F.R.D. 308 (D. Del. 2012) ...................................................................26

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
   80 F. Supp. 3d 610 (E.D. Pa. 2015) .............................................................5

## STATUTES

33 Pa. Stat. Ann. § 1-6 ......................................................................................13

Cal. Bus. & Prof. Code § 17200 ........................................................................32

Cal. Lab. Code § 204 .........................................................................................32

Ill. Comp. Stat. Ann. 80/1 .................................................................................13

Ill. Comp. Stat. § 115/4 .....................................................................................32

Illinois Wage Payment and Collection Law .......................................................33

Iowa Code Ann. § 622.32 ..................................................................................13

Iowa Code § 91A.5 ............................................................................................32

Iowa Wage Payment and Collection Law ...........................................................33

Mass. Gen. Laws Ann. ch. 259, § 1 ...................................................................13

Mass. Gen. Laws ch. 149, § 148 .......................................................................32

Massachusetts Payment of Wages Act ...............................................................32

N.C. Gen. Stat. § 22-1-5 ....................................................................................13

N.C. Gen. Stat. § 95-25.6 ..................................................................................32

N.Y. Gen. Oblig. Law § 5-701 ...........................................................................13

N.Y. Lab. Law § 193(1) ..............................................................................32, 33

Pennsylvania Wage Payment and Collection Law ..............................................31

S.C. Code Ann. § 41-10-40 ...............................................................................32

Tex. Bus. & Com. Code Ann. § 26.01 ...............................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 .................................................................................................................5

Fed. R. Civ. P. 12(f) ............................................................................................................5

Fed. R. Civ. P. 23 ...............................................................................................5, 6, 22, 31

Fed. R. Civ. P. 23(a) .................................................................................................. passim

Fed. R. Civ. P. 23(a)(2) .......................................................................................................6

Fed. R. Civ. P. 23(a)(3) .......................................................................................................6

Fed. R. Civ. P. 23(b)(1) .......................................................................................................7

Fed. R. Civ. P. 23(b)(2) .......................................................................................................7

Fed. R. Civ. P. 23(b)(3) .........................................................................................7, 28, 32

Fed. R. Civ. P. 23(c)(1)(A) .................................................................................................5

Fed. R. Civ. P. 23(d)(1)(D) .................................................................................................5

U.S. Const., amend. XIV, Due Process Clause ...................................................................8

U.S. Const. art. IV, § 1, Full Faith and Credit Clause .......................................................8

## I.   **PRELIMINARY STATEMENT**

Plaintiffs seek to certify a putative nationwide class for their breach of contract (Count I), promissory estoppel (Count II), and unjust enrichment (Count III) claims against Defendant Aramark Corporation ("Aramark") in the Second Amended Complaint ("Complaint" or "SAC"). Plaintiffs also bring an array of different state law claims and seek to certify eight statewide subclasses for managers in South Carolina (Counts IV and V), North Carolina (Count VI), Illinois (Count VII), Pennsylvania (Count VIII), New York (Count IX), Iowa (Count X), Massachusetts (Count XI), and California (Count XIII).  All of Plaintiffs' claims are premised on the allegation that Aramark failed to pay year-end bonuses allegedly owed to Plaintiffs and "thousands" of other managers across the country.  Aramark has moved to dismiss the Complaint in part (Dkt. No. 15), but it also moves to strike all of Plaintiffs' class allegations for Counts I-XIII to the extent that those causes of action are not dismissed entirely.  There is no reason to burden the parties or the Court with discovery on these class claims, as the Court can and should conclude now that the claims cannot be adjudicated on a class-wide basis.

*First*, given that Counts I-III are based on common law, the Court would need to conduct an extensive choice-of-law analysis to determine which states' laws apply to each putative class member across all 50 states.  This would require examining the applicable laws for each state where each manager resides, as well as each individual's varying contacts and relationship with one or more states.  Courts have held that this process alone could make a putative nationwide class unmanageable.  The Court can end its analysis and strike the class claims based on this threshold issue, but multiple alternative grounds for striking the claims are set forth below.

*Second,* there are material differences in the elements of and defenses to breach of contract, promissory estoppel, and unjust enrichment claims under the varying state laws.  Thus,

even after any choice-of-law analysis is conducted, applying the selected states' laws would require individualized inquiries and could create inconsistent rulings across the nationwide class.

*Third*, even assuming that Pennsylvania law uniformly should apply for all putative nationwide class members – as Plaintiffs incorrectly suggest in the Complaint without explanation – individualized inquiries preclude certification.  For instance, Plaintiffs' breach of contract claim relies on allegations of implied contracts to pay bonuses.  Even just establishing that a contract existed would require inquiries into each putative class member's individualized communications with Aramark regarding bonus eligibility.  Similarly, Plaintiffs' promissory estoppel claim requires inherently individualized inquiries into whether each putative class member actually relied on Aramark's purported varying promises to pay bonuses and what actions each individual took or refrained from taking in reliance on such alleged promises. Plaintiffs' unjust enrichment claim also requires individualized inquiries into each putative class member's varying circumstances to determine whether the failure to pay allegedly earned bonuses was unjust or inequitable.

*Fourth*, the statewide subclass allegations pled in Counts IV-XIII also should be dismissed because they require inherently individualized inquiries like those that preclude certification of the putative nationwide class under Counts I-III.  Specifically, the state law statutory claims in Counts IV-XIII either require proof of a contract for the alleged unpaid wages or proof that such wages were actually earned and due.  Thus, as stated above, Plaintiffs will need to rely on individualized evidence to establish that Aramark owed bonuses to each putative class member.

Aramark respectfully requests that this Court strike Plaintiffs' putative nationwide class allegations as pled in Counts I-III and Plaintiffs' statewide subclass allegations pled in Counts

IV-XIII, before the parties and the Court waste resources on extensive discovery for class

allegations that are deficient on their face.

## II.  <u>RELEVANT BACKGROUND</u>

Plaintiffs are thirteen current and former Aramark managers who are residents of or have

worked for Aramark in varying jobs in twelve different states: California, Delaware, Florida,

Iowa, Illinois, Massachusetts, North Carolina, New York, Pennsylvania, South Carolina,

Tennessee, and Texas.  *See* SAC ¶¶ 1-13, 21-33.  Plaintiffs assert their common law claims on

behalf of themselves and the following putative class, which would include Aramark employees

in all 50 states:

> [A]ll managers employed by [Aramark] in the United States in Career Bands 5-8
> who (i) were eligible for bonus pay under an FY 2018 Bonus Plan and (ii) have
> not received bonus pay owed.

*See* SAC ¶ 45.  Plaintiffs also assert eight putative statewide subclasses, alleging violations of

state law on behalf of Aramark managers who worked in South Carolina, North Carolina,

Illinois, Pennsylvania, New York, Iowa, Massachusetts, and California.  SAC ¶¶ 46-53.

The gravamen of Plaintiffs' Complaint is their allegation that Aramark agreed to pay

bonuses to its managers in Career Bands 5-8 for 2018, but failed to do so.  However, as set forth

in the pending Motion to Dismiss, Plaintiffs do not cite to any written contract that expressly

guaranteed any certain bonus payments for 2018.  Instead, Plaintiffs rely on pieces of varying

offer letters, employment agreements, email communications, and summaries of the

Management Incentive Bonus ("MIB") and Front Line Manager ("FLM") plans.  SAC ¶¶ 34-38,

4-44, 61-73.  But even those documents fail to expressly or even implicitly guarantee any

particular bonuses.

For example, the offer letters and employment agreements that some (but not all)

Plaintiffs attached to the Complaint speak to their ***eligibility*** for (not ***entitlement*** to) bonuses.

*See* SAC, Exhibits ("Exs.") A-C (emphasis added).  Moreover, those documents relate only to bonus eligibility in 2016 and 2017 and say nothing about 2018.  *See id.*  The excerpts of bonus plan summaries go a step further and expressly confirm that "receipt of this email ***does not guarantee participation in the bonus program***."  *See* SAC*,* Exs. D-E (emphasis added).

In sum, as illustrated by the very documents that Plaintiffs rely upon in the Complaint, Aramark's bonus programs were discretionary, as well as subject to Aramark's "interpretation and administration."  *Id.*  Any given employee's MIB bonus eligibility further depended on numerous factors such as adjusted operating income, revenue, individual objectives (including operations, growth, finance, and engagement metrics), individual performance, district team performance, and region team performance.  *See* SAC, Ex. D.  Likewise, FLM bonus eligibility turned on factors such as front line contribution (which is impacted by operating expenses), revenue, client budget, labor productivity, partnership value index, patient satisfaction, individual objectives, and industry objectives.  SAC, Ex. E.

Aramark informed its managers that it decided not to pay 2018 performance bonuses for Career Bands 5-8 because there was great disparity in financial performance across its lines of business.  *See* SAC, Ex. I.  In a separate effort to recognize select managers for their success, impact, and importance to Aramark, however, Aramark provided one-time Special Recognition Awards to certain managers in early 2019.  *Id.*  These awards were part of Aramark's decision to use the majority of its savings from U.S. tax reform to make the single largest one-time investment in its employees in Aramark's history.  *Id.*  For example, the Complaint acknowledges that lead Plaintiff Henry Lacher received a $27,500 Special Recognition Award. *Id.*  Like Plaintiff Lacher, select managers across the country received Special Recognition Awards that often exceeded what they could have received through 2018 bonuses.

### III.    **ARGUMENT**

#### A.    **The Court Properly May Strike Plaintiffs' Class Allegations Or Deny Class Certification At The Outset Of This Litigation.**

"As an initial matter, the authority to strike class allegations stems from Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D)."  *Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, No. 12-929, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015) (granting motion to strike class allegations before discovery because plaintiff pled a putative class that was not ascertainable); *see also* Fed. R. Civ. P. 12(f), 23(d)(1)(D), 23(c)(1)(A).  There is no question within the Third Circuit that Federal Rule 12 and Federal Rule 23 "provide authority for the Court to strike class allegations from [a] [p]laintiffs' [c]omplaint, if appropriate, even before [p]laintiffs move for class certification."  *Bell*, 2015 WL 401443, at *2.

A motion to strike class allegations should be granted where, like here, "class treatment is evidently inappropriate from the face of the complaint." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015) (striking class allegations after finding that "the complaint leaves little doubt" that class allegations "are not viable"); *Hightower v. Wells Fargo Bank, N.A.*, No. CV 17-04119, 2018 WL 1518616, at *7 (E.D. Pa. Mar. 28, 2018) (striking class allegations where plaintiffs' putative class definition was "internally inconsistent in ways that make the case unlikely to be eligible for class certification").

Regardless of the timing of this motion or the moving party, the burden of proving that every requirement of Federal Rule 23 is satisfied remains with Plaintiffs.  *See Barabin v. Aramark Corp.*, 210 F.R.D. 152, 157 (E.D. Pa. 2002) (striking class allegations and holding that plaintiff had "the burden of proving that the class should be certified"), *aff'd*, No. 02-8057, 2003 WL 355417 (3d Cir. Jan. 24, 2003); *see also Bell*, 2015 WL 401443, at *5 ("[A]ccelerating the class certification question does not alter the traditional Rule 23 burdens.").  A plaintiff's failure

to satisfy any one of the Rule 23 requirements is fatal to class certification. *Hightower*, 2018 WL 1518616, at *6 (granting motion to strike class allegations where plaintiffs' own allegations showed there could be no commonality or predominance under Rule 23, although other requirements were met).

Careful scrutiny of the Rule 23 requirements is critical given the Supreme Court's guidance that "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Accordingly, as this Court has recognized, the Third Circuit requires courts "to ***rigorously assess*** the available evidence to assure the prerequisites of Rule 23 are met and to resolve factual disputes by a preponderance of the evidence and make findings that each Rule 23 requirement is met or is not met." *Lisa v. Saxon Mortg. Servs., Inc.*, No. 11-4586, 2016 WL 5930846, at *2 (E.D. Pa. Oct. 11, 2016) (Padova, J.) (emphasis added) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008)).

Rule 23(a) contains four requirements for class certification: numerosity, commonality, typicality and adequacy. With regard to the commonality requirement, Rule 23(a)(2) requires that Plaintiffs' alleged common law claims are capable of being resolved class-wide "in one stroke." *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 267 (E.D. Pa. 2013) (citing *Dukes*, 564 U.S. at 349). "What matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Saxon*, 2016 WL 5930846, at *14 (citing *Dukes*, 564 U.S. 338). Similarly, typicality under Rule 23(a)(3) requires this Court to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other

members of the class even though common issues of law or fact are present." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012).

In addition to the requirements for certification in Rule 23(a), Plaintiffs must also satisfy the requirements of Rule 23(b)(1), (2), or (3).  Here, Plaintiffs only seek to certify their putative nationwide claims under Rule 23(b)(3).  SAC ¶ 59.  Class certification thus is only proper if Plaintiffs meet their burden to show not only that common questions will predominate over the individual questions raised by each putative class member's claims, but also that class treatment is superior to individual litigation.  Fed. R. Civ. P. 23(b)(3).  The Supreme Court and the Third Circuit have cautioned that Rule 23(b)(3)'s predominance requirement is more demanding than Rule 23(a)'s commonality requirement.  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013); *Danvers Motor Co. v. Ford Motor Co*., 543 F.3d 141, 148 (3d Cir. 2008).

### B.   The Court Should Strike Plaintiffs' Nationwide Claims In Counts I-III Because They Require An Extensive Choice-of-Law Analysis That Precludes Class Certification.

Plaintiffs allege without explanation that "basic common-law principles applicable in Pennsylvania" somehow should apply to their putative nationwide class claims under Counts I-III for thousands of individuals in all 50 states.  SAC ¶¶ 61, 71.[1]  However, perhaps recognizing that it would not be appropriate to extend Pennsylvania law to every putative class member nationwide, Plaintiffs also seek to certify eight statewide subclasses bringing various state statutory claims based on where each Plaintiff and certain putative class members worked for Aramark.  SAC ¶¶ 46-53.  Applying Pennsylvania law to a nationwide class that overlaps with eight state law subclasses defies common sense.  For example, accepting Plaintiff's choice of law

---

[1] Plaintiffs do not explicitly allege which state's law should apply to their promissory estoppel claim as they do for Counts I and III, perhaps conceding as they should that a choice-of-law analysis is required.

as pled in the SAC would require the Court to apply Pennsylvania law for a breach of contract claim (Count I) brought by a Plaintiff in South Carolina but then apply South Carolina law for that same Plaintiff's claim for breach of contract accompanied by a fraudulent act (Count IV).

Moreover, the Supreme Court has held that applying one state's law to a purported nationwide class without an adequate choice-of-law analysis would violate the Due Process Clause of the Fourteenth Amendment, as well as the Full Faith and Credit Clause of Article IV, § 1 of the U.S. Constitution.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985).  The Complaint ignores this basic principle entirely and offers no allegations to support the extension of Pennsylvania common law to every class member nationwide.

To determine which states' laws actually apply to Counts I-III, the Court must engage in a two-part analysis: (1) determine if there is a "true conflict" between the various applicable state laws, which requires not only looking at the law but also the public policies behind the laws in each state that may suggest conflicts, and (2) if a conflict exists, determine which of the states has a greater interest in applying its law to the dispute.  *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (citing *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).  For the second part of this choice-of-law analysis, courts also must weigh the "contacts" between the parties and the states at issue by looking at factors such as: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.  *Hammersmith*, 480 F.3d at 232-33; *Inoff v. Craftex Mills, Inc.*, No. 06-3675, 2007 WL 4355385, at *7 (E.D. Pa. Dec. 11, 2007) (discussing choice of law analysis for breach of contract, promissory estoppel, and unjust enrichment claims).  "It is not enough to simply count the states' contacts; they should be weighed on a qualitative scale

according to their relation to the policies and interests underlying the [particular] issue." *Powers v. Lycoming Engines*, 328 F. App'x 121, 125 (3d Cir. 2009).

Critically, "[d]etermining whether such contacts and interests exist requires an ***individualized scrutiny*** of 'the claims asserted by ***each member*** of the plaintiff class.'" *Id.* (quoting *Shutts*, 472 U.S. at 821–22); *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (emphasis added) (citing *Shutts*, explaining that "we must apply an individualized choice of law analysis to each plaintiff's claims," and denying class certification in part because several different state laws were implicated by plaintiffs' tort claims). The goal of this individualized analysis is to ensure that each class member has sufficient contacts with the state law being applied, such that application of the state law would not be "arbitrary" or "unfair" to all parties. *Shutts*, 472 U.S. at 821-22. The expectations of the parties constitute "an important element" in that inquiry. *Id.*, 472 U.S. at 822. Ultimately, "[a] proper application of Pennsylvania's choice of law principles may [] indicate[] that the law of more than one state governs the parties' dispute," for a nationwide class action claim. *Powers*, 328 F. App'x at 126-7.

Here, applying the required choice-of-law analysis to just the thirteen named Plaintiffs, let alone thousands of others, demonstrates that multiple states' laws would need to be applied to Counts I-III. For example, Plaintiff Gaston resides in and worked for Aramark in Texas. As explored further below, there are several differences between the applicable laws in Pennsylvania and Texas, with the most significant being that Texas does not even recognize unjust enrichment as an independent cause of action. *See infra* 19. Given this true conflict, the Court would then need to conduct a qualitative analysis of Plaintiff Gaston's relevant contacts between Texas and Pennsylvania to determine which state has the greater interest in having its law apply to this dispute. If the relationship between Plaintiff Gaston and Aramark "centered" in

Texas, Texas law should apply.  *Powers*, 328 F. App'x at 126 (describing choice of law factors for unjust enrichment claim to focus on the location where the parties' relationship "centered" and where benefit was conferred).  But all of the relevant factors identified above would need to be considered, including where the alleged agreement to pay a bonus was formed for this particular individual, where else he performed work, and more.

The Court would need to repeat this analysis for the myriad of legal issues relevant to the claims and defenses arising from Counts I-III, not just for the Plaintiffs, but for each of the thousands of putative class members nationwide.  The process of going through this choice-of-law analysis on an individual basis alone makes the putative class unmanageable.  *See, e.g.*, *Ritti v. U-haul Int'l Inc.*, No. 05-4182, 2006 WL 1117878, at *14 (E.D. Pa. Apr. 26, 2006) (denying certification for a putative nationwide class because "allowing this Class Action to proceed will require countless choice-of-law determinations and an unmanageable inquiry into the law governing the existence, terms, and breach of each contract, the availability of defenses to any breach, and the resulting damages for a vast number of the purported Class members"); *Dawson v. Dovenmuehle Mortg., Inc.*, 214 F.R.D. 196, 201 (E.D. Pa. 2003) (denying class certification where "[m]embers of the putative class will come from various jurisdictions and choice of law may pose major problems" because applicable mortgage laws for the class differed among the states); *Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 393-94 (D. Kan. 1998) (denying class certification in part because the choice-of-law analysis alone would create manageability issues).

The Court can end its analysis here and strike the nationwide class claims.  Alternatively, there are several additional, independent grounds for that relief set forth below.

**C.     The Court Should Strike Plaintiffs' Nationwide Claims In Counts I-III Because The Variances In The State Laws That Could Apply To Those Claims Preclude Certification Under Federal Rules 23(a) And 23(b).**

Even if the unwieldy choice-of-law analysis could somehow be performed for each member of the putative class, the application of materially varying state laws to Counts I-III would still preclude class certification.  This is because the need to apply differing laws to separate claims by separate class members in the same action often makes a class trial unmanageable and inappropriate.  *Powers*, 328 F. App'x at 124 ("In diversity cases such as this, attempts to structure and certify nationwide classes involving plaintiffs in all fifty states often turn on whether the law of a single state or multiple states should be applied.  Irreconcilable conflicts can be an impediment to certification . . .").  Courts have held that "[i]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996); *see In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."); *see also Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1367 n.44 (11th Cir. 2002) ("[I]n ruling that the laws of all fifty states apply, that alone would render the class unmanageable").

Here, there are material differences in the elements of and defenses to breach of contract, promissory estoppel, and unjust enrichment claims under various state laws that warrant striking the purported nationwide class actions for those claims.

**1.     Plaintiffs' breach of contract claim in Count I is incompatible with class treatment because of the variance among the states' laws.**

Plaintiffs' putative nationwide claim for breach of contract fails to satisfy the commonality, typicality, predominance, and superiority requirements of Rules 23(a) and 23(b)

due to critical variances among the applicable states' laws.  As just a few examples, states vary in terms of (1) the elements of a breach of contract claim, (2) the applicability of states' statutes of frauds as a defense to the breach of contract claim, and (3) the admissibility of extrinsic evidence beyond the alleged contracts to pay bonuses.

*First*, there are significant differences among state laws with regard to the elements necessary to establish a breach of contract.  For example, Pennsylvania law requires that a plaintiff prove the existence of a valid contract, breach, and resulting damages; the laws of Texas, New York, Iowa, and Illinois (where Plaintiffs Gaston, Mayer, Peterson, and Weronko reside and/or worked, *see* SAC ¶¶ 3, 4, 8, 9) require a plaintiff to also prove that he or she performed his or her obligations in the contract just to establish a *prima facie* case.  *Compare Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006); *with Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. Ct. App. 2000), *Rexnord Holdings v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994), *Molo Oil Co. v. River City Ford Truck Sales*, 578 N.W.2d 222, 224 (Iowa 1998) (citations omitted), *and Van Der Molen v. Wash. Mut. Fin., Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005).  Additionally, in California (where Plaintiff Yin works, *see* SAC ¶ 33), a plaintiff must prove performance or a justifiable excuse from performance to bring a breach of contract claim. *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 96 Cal. Rptr. 3d 813, 839 (Cal. Ct. App. 2009).  In Massachusetts (where Plaintiff Doherty worked, *see* SAC ¶ 32), a plaintiff need only exhibit a willingness to perform rather than actual performance.  *Amicas, Inc. v. GMG Health Sys.*, 676 F.3d 227, 231 (1st Cir. 2012).  These are just a few examples, based on where the named Plaintiffs worked, of material differences in state law.  It is evident that different putative class members would need to adduce a variety of different evidence to even satisfy the

basic elements of this cause of action at trial, which would preclude a class-wide resolution "in one stroke" as required by Federal Rule 23. *Martin*, 292 F.R.D. at 267.

*Second*, because Plaintiffs' breach of contract claim is not based on an express written contract signed by all parties, various states' statutes of frauds could (and should) apply as a defense to preclude Plaintiffs' implied contract theory. Some states, including New York, Illinois, Texas, Iowa, and Massachusetts (where Plaintiffs Mayer, Weronko, Gaston, Peterson, and Doherty worked), have a statute of frauds that bars recovery for oral or implied contracts that cannot be performed within one year. *See* N.Y. Gen. Oblig. Law § 5-701; 740 Ill. Comp. Stat. Ann. 80/1; Tex. Bus. & Com. Code Ann. § 26.01; Iowa Code Ann. § 622.32; Mass. Gen. Laws Ann. ch. 259, § 1. In contrast, Pennsylvania and North Carolina are among the states that do not include the "one-year" provision in their statutes of frauds. *See* 33 Pa. Stat. Ann. § 1-6; N.C. Gen. Stat. § 22-1-5. Here, Plaintiffs allege that they are entitled to bonuses based on the existence of implied contracts created by various verbal and written communications that occurred over the course of many years. For example, Plaintiffs rely on offer letters from 2016 and 2017 (*see* SAC Ex. A-C) and verbal statements made during interviews in those years (*see* SAC ¶ 36) to support their implied contract claim. Any contracts implied by communications in 2016 and 2017, however, certainly could not have been performed within one year. Likewise, any emails or verbal statements which allegedly promised bonuses over a year later would also be barred by the statute of frauds from being considered an enforceable contract. Thus, depending on each applicable state's statute of fraud, this doctrine could serve as a defense to Plaintiffs' breach of contract claim. Because application of this defense would vary depending on the states and the individualized nature and timing of promises in emails, offer letters, or verbal statements for each class member, nationwide class adjudication is inappropriate.

*Third*, there are also significant differences among the states regarding whether extrinsic evidence is permitted to establish the existence of a contract, to modify a contract, or to interpret a contract.  For example, Pennsylvania, California, Vermont, and Illinois permit parol evidence to determine whether a contract term is ambiguous, whereas Florida, Hawaii, Kansas, Texas and other states do not.  *Compare Stewart v. McChesney*, 444 A.2d 659, 661-62 (Pa. 1982), *Estate of Kaila v. Kaihlan*, 94 Cal. App. 4th 1122, 1132-33 (Ca. App. 2002), *Main St. Landing, L.L.C. v. Lake St. Assoc., Inc.*, 892 A.2d 931, 935 (Vt. 2006), *and Midwest Grocery Co. v. Danno*, 172 N.E.2d 648, 651 (Ill. App. 1961); *with Emergency Assoc. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1002 (Fla. Dist. Ct. App. 1995)*; Low v. Honolulu Rapid Transit Co*., 50 Haw. 582, 586, 445 P.2d 372, 376 (1968), *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884 (Kan. 1992), and *New Concept Constr. Co., Inc. v. Krirbyvill Consol. Indep. Sch. Dist.*, 119 S.W.3d 468, 469 (Tex. Ct. App. 2003).  Additionally, North Carolina and South Dakota only permit parol evidence to show fraud in connection with a contract.  *Parker v. Bennett*, 231 S.E.2d 10, 13 (N.C. App. 1977); *Nat'l Boulevard Bank of Chi. v. Makens*, 370 N.W.2d 183 (S.D. 1985).  Here, because Plaintiffs' breach of contract claim is based on varying alleged implied contracts cobbled together from alleged past conduct and various documents, the admissibility of parol evidence is significant to the resolution of each class member's claim.  This results in yet another set of reasons why the breach of contract claim cannot be resolved based on common evidence: the named Plaintiffs' claims are not typical of all class members nationwide, individualized issues would predominate in this litigation, and class adjudication is not superior to individual litigation.

Courts presented with meaningful differences among various states' laws – like those at issue here – have held time and again that breach of contract actions are "ill-suited for

nationwide class certification." *See Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 696-99 (M.D. Ga. 2012) (granting motion to strike putative nationwide class action breach of contract claims arising from insurance contracts and stating that "variations in state [contract law] . . . swamp any common issues and defeat predominance"); *Rapp v. Green Tree Servicing, Ltd. Liab. Co.*, 302 F.R.D. 505, 510 (D. Minn. 2014) (denying class certification for plaintiffs' breach of contract claim, holding that common questions did not predominate); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 544 (C.D. Cal. 2013) (denying class certification for breach of contract claim because class did not meet commonality and predominance requirements where there were "key differences among state laws regarding . . . admissibility of extrinsic evidence" as well as the states' breach of contract laws that could "greatly affect how the relevant provisions of the agreements are interpreted and ultimately whether there was a breach of those provisions"); *Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Exp. (USA), Inc.*, No. 08-CV-761C, 2011 WL 815209, at *7 (W.D.N.Y. Mar. 2, 2011) ("[C]ourts have found class certification [of breach of contract claims] improper due to significant variations in the states' laws with regard to the use of extrinsic evidence."); *Bowers v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 580 (E.D. Mich. 2004) (denying motion for class certification of breach of contract claim based on the vast differences among states regarding whether extrinsic evidence is permitted); *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wash. 2d 260, 271, 259 P.3d 129, 134 (Wash. 2011) ("Based primarily on the burden of applying multiple states' [contract] laws, an overwhelming number of federal courts have denied certification of nationwide state-law class actions.").

In *Lawson*, for instance, the court dealt with a motion to strike nationwide class allegations for breach of contract, unjust enrichment and other state law claims arising from a

purported breach of credit insurance agreements.  *Lawson*, 286 F.R.D. at 694-95.  The court

granted the motion to strike prior to completing discovery, finding that it would be impossible to

certify the putative nationwide classes based on the allegations of the plaintiffs' own complaint.

*Id.* at 697-99.  Specifically, the court observed that individual issues predominated because there

was no uniform contract or breach that applied to all putative class members.  The court also

concluded that "variations in state law" on contract and credit insurance issues "swamp[ed] any

common issues and defeat[ed] predominance."  *Id.* at 699 (internal quotations omitted).

Here, too, this Court would be faced with applying inconsistent elements of the contract

claim, defenses, and evidentiary laws to resolve Plaintiffs' breach of contract claim advanced for

thousands of individuals.  Plaintiffs' breach of contract claim is incompatible with nationwide

class adjudication and should be stricken.

**2.      Plaintiffs' promissory estoppel claim in Count II is incompatible with class treatment because of the variance among the states' laws.**

Plaintiffs' putative nationwide class claim for promissory estoppel also fails to satisfy the

requirements of Rule 23(a) or 23(b) due to inconsistencies among the applicable states' laws.

For example, state laws vary in terms of (1) the requisite elements of this claim, (2) the

availability of affirmative relief through a promissory estoppel claim, and (3) the right to a jury

trial for a promissory estoppel claim.  Therefore, Plaintiffs' promissory estoppel claim is

incompatible with nationwide class treatment and should be stricken.

*First*, there are variances among the states with regard to the requisite elements to prove a

*prima facie* case of promissory estoppel.  For example, a promissory estoppel claim under

Pennsylvania law requires that (1) the promisor made a promise that it should have reasonably

expected would induce action or forbearance on the part of the promisee; (2) the promisee

actually took action or refrained from taking action in reliance on the promise; and (3) injustice

can be avoided only by enforcing the promise.  However, New York, Vermont, and Maryland common law also requires proof that the defendants' conduct was "unconscionable." *Compare Elwell v. SAP Am., Inc.*, No. 18-CV-0489, 2019 WL 1114898, at *5 (E.D. Pa. Mar. 8, 2019); *with Weissman v. Seiyu, Ltd*., No. 98 Civ. 6976 (HB), 2000 WL 42205, at *32 (S.D.N.Y. Jan. 14, 2000), *Turkovich v. APC Capital Partners*, 259 F. Supp. 2d 314, 320 (D. Vt. 2002), *and Huffman v. Town of La Plata*, No. CIV.A. DKC 2004-2833, 2005 WL 1038854, at *32 (D. Md. May 4, 2005).  Thus, putative class members in those states would have to litigate a significant additional issue of unconscionability involving entirely different evidence than what would be relevant to this claim in other states.

*Second*, not all states allow recovery of affirmative relief through a promissory estoppel claim.  For example, courts in North Carolina (where Plaintiff Masonoff worked) have held that a promissory estoppel claim is not available as an "affirmative" right of action to recover damages in lieu of an enforceable contract.  *River's Edge Pharm., LLC v. Gorbec Pharm. Servs.*, No. 1:10-CV-991, 2012 WL 1439133, at *32 (M.D.N.C. Apr. 25, 2012) (dismissing promissory estoppel claim because "while some courts will use affirmative or offensive promissory estoppel to supply a missing contract term, and bind the parties, North Carolina courts do not recognize a claim for this type of 'offensive' promissory estoppel") (citing *Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.*,  358 S.E.2d 539, 541 (N.C. 1987)).  This is just one example of a state where the class members would be subject to a unique defense, precluding nationwide adjudication of this cause of action based on common evidence.

*Third*, not all states provide a plaintiff the right to a jury trial for a promissory estoppel claim.  For example, while Pennsylvania, Michigan, and Indiana allow for jury trials to decide promissory estoppel claims, many other states (including Minnesota, Texas, and New York) do

not. *Compare See Osborne-Davis Transp. Co. v. Mothers Work, Inc*., 3 Pa. D. & C. 5th 53, 58

(Pa. C.P. 2008) (finding that a plaintiff is entitled to a jury trial on a promissory estoppel claim),

*Katterman Trucking, Inc. v. Laidlaw*, No. 199283, 1998 WL 1997525, at *1-2 (Mich. Ct. App.

Jan. 23, 1998), and *Burton v. GMC*, No. 1:95-CV-1055, 2008 WL 3853329, at *23-38 (S.D. Ind.

Aug. 15, 2008) (holding plaintiffs had a right to a jury trial for their promissory estoppel claims);

*with InCompass IT, Inc. v. XO Commc'ns Servs*., 719 F.3d 891, 898 (8th Cir. 2013), *Nimrod*

*Mktg. (Overseas), Ltd., v. Texas Energy Inv. Corp.*, 769 F.2d 1076, 1079-80 (5th Cir. 1985), and

*Merex A.G. v. Fairchild Weston Sys., Inc*., 29 F.3d 821 (2d Cir. 1994).  Here, if a nationwide

class were certified for Plaintiffs' promissory estoppel claim, the Court would be faced with an

unmanageable situation in which some Plaintiffs and putative class members could have a jury

trial for their promissory estoppel claims, while others could not, depending on the applicable

state laws.

Given similar conflicts, courts have refused to certify a nationwide class for a promissory

estoppel claim.  For example, in *Cowit v. CitiMortgage, Inc*., No. 12-869, 2013 WL 940466

(S.D. Ohio Mar. 8, 2013), the court reviewed nationwide class allegations for common law

claims and granted defendant's motion to strike plaintiffs' class allegations for promissory

estoppel in particular.  Specifically, the *Cowit* court found that "[e]ach putative class member's

common law claims would likely be governed by [different states and] . . . the Court would need

to apply the laws of different states in the putative nationwide class action."  *Id.* at *6.  Given the

conflicts among state common law principles across the country, the court held that plaintiff's

nationwide class claim for promissory estoppel could not be certified.  *See id*.

Here, too, material differences in the elements and application of a promissory estoppel

theory to individuals in 50 different states preclude class-wide adjudication.

### 3. Plaintiffs' unjust enrichment claim in Count III is incompatible with class treatment because of the variance among the states' laws.

As with Plaintiffs' breach of contract and promissory estoppel claims, there are also significant differences between state laws governing unjust enrichment that preclude class certification. For example, states vary in terms of (1) whether unjust enrichment is even recognized as an independent cause of action, (2) what the requisite elements of an unjust enrichment claim are, and (3) whether a plaintiff must exhaust all other remedies prior to pursuing an unjust enrichment claim.

*First*, states such as Texas, Florida, Massachusetts, and New Hampshire do not recognize unjust enrichment as an independent cause of action. *See Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 114 (Tex. App. Ct. 2012) ("This Court has held that unjust enrichment is not an independent cause of action."); *State v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (dismissing unjust enrichment claim under Florida law because "Plaintiffs cannot base an unjust enrichment claim on alleged wrongdoing for which an independent basis for recovery exists" and because "[a]s soon as a claimant relies on a wrong to supply the unjust factor . . . the right on which [the plaintiff] relies arises from that wrong, not from unjust enrichment"); *Lopes v. Commonwealth*, 811 N.E.2d 501, 509 (Mass. 2004) ("[T]he plaintiffs' claim of unjust enrichment does not state a separate cause of action, but a theory of recovery."); *Gen. Insulation Co. v. Eckman Constr.*, 992 A.2d 613, 621 (N.H. 2010) (finding that "unjust enrichment generally does not form an independent basis for a cause of action"). This individualized defense would apply to only portions of the putative nationwide class and thus precludes common adjudication of the claim.

*Second*, state laws differ materially in the requisite elements to establish an unjust enrichment claim. In Pennsylvania, an unjust enrichment claim requires proof that a defendant

either wrongfully secured or passively received a benefit, in either case under inequitable circumstances.  *Search, Inc. v. Fleming Steel Co*., 787 A.2d 988, 991 (Pa. Super. Ct. 2001). California and Nebraska, however, require proof that the defendant also engaged in fraud, duress, or taking of an undue advantage.  *See Enter. Leasing Corp. v. Shugart Corp.*, 231 Cal. App. 3d 737, 748, 282 Cal. Rptr. 620, 626 (Cal. Ct. App. 1991); *Haggard Drilling, Inc. v. Greene,* 195 Neb. 136, 236 N.W.2d 841 (Neb. 1975).  In contrast, Arkansas and Idaho do not require proof of a wrongful or tortious act by the defendant to prove unjust enrichment. *Frigillana v. Frigillana*, 266 Ark. 296, 584 S.W.2d 30 (Ark. 1979); *Witt v. Jones*, 111 Idaho 165, 175 (Id. 1986).  Finally, some states require proof of an actual loss or impoverishment, while others do not.  *See In re Grand Theft Auto Video Game Consumer Litig*., 251 F.R.D. 139, 147–48 (S.D.N.Y. 2008) (explaining differences between state laws on unjust enrichment claims).  In sum, widely varied and individualized proof would need to be developed in discovery and offered at trial depending on which states' laws apply to which class members such that individualized issues would predominate and a class-wide trial would be unmanageable.

*Third*, certain states require that the plaintiff exhaust all legal remedies against the defendant, such as a breach of contract claim in the first instance, in order to assert a claim for unjust enrichment.  For example, under Tennessee law, a plaintiff must show that he or she has exhausted all other available remedies against the defendant prior to raising an unjust enrichment claim.  *Freeman Indus., LLC v. Eastman Chem. Co.*, 175 S.W.3d 512, 525 (Tenn. 2005). Similarly, Arizona, Louisiana, and Minnesota require a showing of a lack of an adequate legal remedy. *Trustmark Ins. Co. v. Bank One, Ariz., N.A*., 202 Ariz. 535 (2002); *Kilpatrick v. Kilpatrick*, 660 So. 2d 182, 187 (La. App. 1995); *Southtown Plumbing, Inc. v. Har-Ned Lumber Co*., 493 N.W.2d 137, 140 (Minn. App. 1992).  This unique defense applicable to some putative

class members is yet another reason why the unjust enrichment claim is not subject to common adjudication for all managers nationwide.

Given even just these examples of the stark differences among state common law causes of action, courts have acknowledged that "unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone among the fifty states." *In re Sears, Roebuck & Co.*, Nos. 05-C-4742/2623, 2006 WL 3754823 at *1 n.3 (N.D. Ill. 2006). Consequently, courts in this and other jurisdictions have properly denied certification of nationwide unjust enrichment claims. *See, e.g.*, *In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150, 168 (E.D. Pa. 2015) (denying certification of plaintiffs' nationwide claim of unjust enrichment because a true conflict of law existed between Pennsylvania law and the unjust enrichment laws of the fifty states and each state individually had a greater interest in having its own different unjust enrichment law applied); *Thompson v. Bayer Corp.*, No. 4:07-00017, 2009 WL 362982, at *4 (E.D. Ark. Feb. 12, 2009) (denying certification of nationwide unjust enrichment claim, holding that "[a]fter an extensive review of the law, the Court finds that the states' different approaches to, or elements of, unjust enrichment are significant"); *Muehlbauer v. GMC*, No. 05-C-2676, 2009 WL 874511, at *14 (N.D. Ill. Mar. 31, 2009) (denying plaintiffs' motion for class certification because the laws of unjust enrichment vary from state to state and therefore were not appropriate for nationwide class treatment); *Spencer v. Hartford Fin. Servs. Grp. Inc.*, 256 F.R.D. 284, 305 (D. Conn. 2009) (denying certification of plaintiffs' unjust enrichment claim due to "the sheer complexity of elements . . . [of an] unjust enrichment claim [which] defeat[s] a finding of predominance," and collecting cases illustrating the differences in elements under various state laws). This same result is proper here, and the Court should strike the nationwide class allegations for the unjust enrichment claim.

21

**D.      The Individualized Inquiries Inherently Necessary To Prove Counts I-III Also Preclude Certification.**

As another independent basis to grant this Motion, even if Pennsylvania common law somehow were applied for all putative class members throughout the country as Plaintiffs have proposed, individualized inquiries would preclude class certification under Federal Rule 23.

**1.      Plaintiffs' breach of contract claim inherently requires individualized inquiries that preclude class certification.**

Even if Pennsylvania law governed Plaintiffs' putative nationwide claim for breach of contract, Plaintiffs would fail to satisfy Rules 23(a) and 23(b) because the adjudication of Plaintiffs' and the putative class members' breach of contract claims would require analysis of each class member's individual history of bonus payments, employment agreements, offer letters, email correspondence, and other alleged "contracts."

Under Pennsylvania law, "[t]o maintain a cause of action in breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages." *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006). However, class-wide adjudication mandates (1) common factual and legal inquiries subject to common answers, (2) that common inquiries predominate over individual inquiries, and (3) that a class action trial would be manageable.

Here, Plaintiffs' breach of contract claim is premised on allegations of implied contracts to pay bonuses based on various written and verbal communications allegedly received by Plaintiffs and thousands of others. *See supra* at 2-4. Consequently, just establishing that a contract existed would require inquiries into each putative class member's individualized communications with Aramark regarding bonus eligibility. For example, Plaintiff Gaston attaches to the Complaint an email that only he received from Aramark, speaking to his personal bonus eligibility, on September 27, 2018. This email reflects that Gaston was personally ***eligible***

22

for a bonus payment as of that date.  SAC, Ex. H.  He claims that his email is an "example[] of Defendant's companywide promises that Managers would receive FY 2018 bonus payments." SAC ¶ 43.  Putting aside the merits of whether such an email could constitute a contract to pay a certain amount of bonuses (which it does not), Plaintiff Gaston's reliance on this email demonstrates the individualized evidence that each manager will rely on just to try to prove the existence of an individual contract with Aramark.

Then, even assuming that Plaintiffs and the putative class members could each establish that they had individual contracts with Aramark (which they cannot), proving that Aramark breached those purported contracts and the existence and extent of damages (despite the Special Recognition Awards) will require even more individualized inquiries.  The bonus plan summary documents attached to the Complaint reflect that each manager's individual performance and many other variables are implicated in any bonus determination.  *See supra* 3-4.  Thus, for the Court to adjudicate a class-wide breach of contract claim, it would need to review each putative class member's performance against his or her alleged bonus plan criteria to determine the availability and calculation of potential economic damages for any breach of contract claim. These questions do not generate common answers because they will require individualized, position-specific analyses of the individuals' job performance, the metrics for their departments, and other variables.

Courts have denied class certification where, as here, the plaintiffs' contract-based claims are not based on an alleged breach of one uniform contract equally applicable to all putative class members.  *See, e.g.*, *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 543 (C.D. Cal. 2013) (denying plaintiffs' motion for class certification due to the "numerous material variations of the provision that serves as the basis for Plaintiffs' breach of contract claim" and

since "[t]he sheer number of additional agreements, even though many are form contracts, suggests that individualized issues would predominate this case") (citing *Westways World Travel Inc. v. AMR Corp*, No. EDCV 99-386, 2005 WL 6523266, at *9-10 (C.D. Cal. Feb. 24, 2005)); *Pop's Pancakes, Inc. v. NuCO2, Inc*., 251 F.R.D. 677, 687 (S.D. Fla. 2008) (denying plaintiffs' motion for class certification for breach of contract claim because the contracts varied among plaintiffs and thus individual inquiries would be necessary to evaluate any alleged breach); *Good v. Ameriprise Fin*., 248 F.R.D. 560, 570 (D. Minn. 2008) (denying class certification for a breach of contract claim where the contracts at issue were not a common written commitment, were not based on the same underlying documents, and were not supported by the same external evidence and, therefore, varying circumstances precluded class treatment).

In sum, Plaintiffs' own allegations and the documents they cite in the Complaint, viewed through the lens of how breach of contract and resulting damages would be established at trial, demonstrate that adjudication of Plaintiffs' claim would require an individualized, cumbersome analysis incompatible with class treatment.

### 2.    Plaintiffs' promissory estoppel claim inherently requires individualized inquiries that preclude class certification.

Again, assuming *arguendo* that Pennsylvania law governs Plaintiffs' putative nationwide claim for promissory estoppel, Plaintiffs nevertheless fail to satisfy Rule 23(a) and 23(b) because the adjudication of each putative class member's promissory estoppel claim would require an individualized analysis of varying past conduct regarding bonuses, offer letters, employment agreements, severance agreements, email correspondence, and other alleged promises pertaining to claimed eligibility for bonus payments.

Under Pennsylvania law, a claim for promissory estoppel requires that (1) the promisor made a clear and unambiguous promise that the promisor should have reasonably expected to

induce action or forbearance on the part of the plaintiff; (2) the plaintiff actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 483 (E.D. Pa. 2010) Proving each of these elements would require inherently individualized analyses that preclude class certification.

As an initial matter, similar to the breach of contract claim, proving that Aramark made a clear and unambiguous promise to pay a certain amount of bonus to any given putative class member would require inquiries into each putative class member's individualized communications with Aramark regarding bonus eligibility. *See Walney v. SWEPI LP*, No. CIV.A.13-102, 2015 WL 5333541, at *59-60 (W.D. Pa. Sept. 14, 2015) (denying class certification of plaintiffs' promissory estoppel claim in part due to the need for the fact-finder to assess each individual lease transaction to determine the dimensions of the alleged promise, and which exact terms and conditions were discussed with which plaintiffs); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 702 (S.D. Ga. 2002) (denying class certification for a promissory estoppel claim because to establish a promise, "each class member would be relying on representations made to him or her and no one else"). Indeed, some managers, like Plaintiff Gaston, could purport to rely on emails with Aramark to establish a promise, while others like Plaintiff Lacher reference their initial offer letters or other documents and communications. *See* SAC ¶¶ 36, 43.

Even if Aramark had made firm promises to pay bonuses to putative class members, however, proving the reliance element of promissory estoppel would require the Court to examine each putative class member's state of mind, as well as what actions they took or refrained from taking in response to the purported promise. These individualized inquiries

would overwhelm any allegedly common questions before the Court.  Courts have often found promissory estoppel claims unsuitable for class treatment, specifically because of the individualized inquiries necessary to prove reliance. *See, e.g.*, *Walney*, at *59-60  (denying class certification of plaintiffs' promissory estoppel claim due to the need to examine the manner in which each plaintiff relied to his detriment); *Yarger v. ING Bank, Fsb*, 285 F.R.D. 308, 328 (D. Del. 2012) (denying class certification for promissory estoppel claim for lack of predominance because, despite a common "promise" to all plaintiffs, "reliance will need to be proven on an individual class member basis" and analyzing reliance would "entail complicated mini-litigations focusing on the individual class members' knowledge and state of mind"); *Rowell v. Voortman Cookies, Ltd*., No. 02-C-0681, 2005 WL 1026715, at *6 (N.D. Ill. Apr. 27, 2005) (denying certification of promissory estoppel class due to individual inquiries into reliance and detriment); *Sateriale v. Rj Reynolds Tobacco Co*., No. 2:09-CV-08394,  2014 WL 7338877, at *35 (C.D. Cal. Dec. 19, 2014) (denying class certification for promissory estoppel claim because determining reliance requires an inquiry into each class member's state of mind and would "undermine any efficiencies that might be achieved by adjudicating this claim on a class-wide basis").

Likewise, as set forth below with regard to the unjust enrichment claim, proving that "injustice" could only be avoided by enforcing the alleged promise (the final element) would also require individualized inquiries into each putative class member's circumstances.  *See, e.g.*, *Walney*, at *59-60 (holding that the "injustice" element of promissory estoppel also requires individualized inquiries that preclude class certification).

In sum, analyzing Plaintiffs' promissory estoppel claim would necessitate individualized inquiries that dwarf any claimed common issues of fact or law that could be decided for the class, making a class-wide trial unmanageable.

### 3.    Plaintiffs' unjust enrichment claim inherently requires individualized inquiries that preclude class certification.

Even if Pennsylvania law governed Plaintiffs' putative nationwide claim for unjust enrichment as well, Plaintiffs would nevertheless fail to satisfy Rule 23(a) and 23(b) because adjudication of this claim would require an individualized analysis of each Plaintiff and putative class member's alleged eligibility for a bonus, their reliance on any promises made by Aramark or its agents, and a determination of how much (if any) compensation purportedly was withheld by Aramark in 2018.

Under Pennsylvania law, a claim of unjust enrichment requires that a plaintiff prove: (1) the existence of benefits conferred on defendant by plaintiff; (2) the appreciation of such benefits by defendant; (3) that the defendant wrongfully secured or passively received the benefit; and (4) that the circumstances between the parties make acceptance and retention of such benefits inequitable without payment of value.  *Search, Inc.*, 787 A.2d at 991.  Given these elements, many courts have recognized that adjudicating unjust enrichment claims on a class-wide basis would require an individualized analysis of each putative class member's circumstances with respect to the lost or conferred benefits at issue, which could include inquiries into any number of unique facts that preclude class certification.  *See, e.g.*, *Grandalski v. Quest Diagnostics*, 767 F.3d 175, 184–85 (3d Cir. 2014) (affirming the denial of certification of an unjust enrichment claim where the district court properly found that individual inquiries would be required in order to determine whether an alleged overbilling by the defendant constituted unjust enrichment for each class member); *Carter v. PJS of Parma, Inc.*, No. 15-1545, 2016 WL 3387597, at *3 (N.D.

Ohio June 20, 2016) (collecting cases and holding that "[i]n the context of unjust enrichment claims, courts have noted that the resolution of such claims depends on individualized inquiries into the particular circumstances of each case to determine whether, without a remedy, inequity would result"); *Parsons v. Phila. Parking Auth.*, No. CV-13-0955, 2016 WL 538215, at *17 (E.D. Pa. Feb. 11, 2016) (denying class certification because a class wide unjust enrichment claim depends on each class member's circumstances and knowledge to determine whether the circumstances were "unjust"); *Walney v. SWEPI LP*, 2015 WL 5333541, at *16 (W.D. Pa. Sept. 14, 2015) (denying certification of plaintiffs' unjust enrichment claim requires "a highly individualized inquiry in order to determine whether a defendant had been unjustly enriched in a particular circumstance"); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. CIV.A. 03-4558, 2012 WL 379944, at *107 (D.N.J. Feb. 6, 2012) (denying class certification of unjust enrichment claim in consumer product action because putative class members received varying representations and product defects from defendants and thus "[c]ommon issues of law and fact thus [did] not predominate over individualized inquiries").

In *Grandalski*, for instance, the plaintiffs sought to certify a nationwide class action for unjust enrichment, among other claims, arising from an alleged scheme by defendants to overbill customers for medical testing services. *Grandalski*, 767 F.3d at 177-78. The district court denied class certification for the putative unjust enrichment class, holding that there were numerous explanations for defendant overbilling the putative class members that would preclude an unjust enrichment claim. *Id.* There were also a number of putative class members that received refunds for overbilled amounts. *Id.* at 185. Thus, the district court held that because determining liability would be highly individualized, common issues of fact and law did not predominate. The Third Circuit affirmed that decision, holding that the need for individual

inquiries into whether each instance of overbilling was "unjust" would preclude a finding of predominance under Rule 23(b)(3).  *Id.* at 184-85.

Like in *Grandalski* and the other decisions cited above, proving that Aramark's alleged failure to pay an allegedly promised bonus to any given manager created "inequitable" or "unjust" circumstances would require individualized inquiries that preclude class-wide treatment. For example, the Court would have to analyze each putative class member's job performance relative to the bonus criteria.  Additionally, the Court would have to determine whether each putative class member received any other payments from Aramark (such as the Special Recognition Award that Plaintiff Lacher concedes that he received) to determine whether Aramark was "unjustly" enriched and, if so, to what extent.  Such individualized inquiries into each putative class member's circumstances preclude a showing that common issues of fact predominate or that a class-wide trial would be manageable.

### E.    The Individualized Inquiries Inherently Necessary To Prove Counts IV-XIII Also Preclude Certification Of Plaintiffs' Statewide Subclasses.

The Court should also grant this Motion and strike all of Plaintiffs' putative statewide subclasses under Counts IV-XIII because they similarly require inherently individualized inquiries that preclude certification of the putative nationwide class under Counts I-III.

#### 1.    Plaintiff's claim for breach of contract accompanied by a fraudulent act under South Carolina law in Count IV requires individualized inquiries that preclude certification.

A claim for breach of contract accompanied by a fraudulent act under South Carolina law requires a plaintiff to plead and then prove that a defendant: (1) breached a contract; (2) committed the breach with fraudulent intent; and (3) committed a fraudulent act accompanying the defendant's breach.  *Connor v. City of Forest Acres*, 348 S.C. 454, 465–66, 560 S.E.2d 606, 612 (S.C. 2002); *Harper v. Ethridge*, 290 S.C. 112 (Ct. App. 1986).  The Supreme Court of

South Carolina has defined a "fraudulent act" as "any act characterized by dishonesty in fact or unfair dealing." *Id.* at 466, 560 S.E.2d 606.  Moreover, "[i]t is well-established that the fraudulent act must be separate and apart from the breach."  *Ring v. The Sports Auth., Inc.*, No. CIV.A.6:04-21848, 2006 WL 83047, at *7 (D.S.C. Jan. 10, 2006).

As discussed above, just establishing that a contract existed and was breached would require inquiries into each putative class member's individualized communications with Aramark regarding bonus eligibility.  *See supra* 22-24.  For that reason alone, Plaintiffs would fail to satisfy Rules 23(a) and 23(b) for this cause of action.

However, class certification for Count IV is also inappropriate because even assuming that Plaintiffs could establish that Aramark breached a contract (which they cannot), proving the fraud elements of this claim would also require several individualized inquiries.  Specifically, Plaintiff would need to prove for each putative class member that Aramark breached the alleged contract(s) with fraudulent intent.  That would require examining the specific actions that Aramark took with respect to each class member, the knowledge Aramark possessed at the time such actions were taken, and any other evidence to demonstrate a fraudulent motive.  *See, e.g.*, *Coker's Mobile Home Plaza, Inc. v. ITT Commercial Fin. Corp.*, 900 F.2d 250 (4th Cir. 1990) (holding that establishing fraudulent intent for a breach of contract accompanied by a fraudulent act requires examining the circumstances surrounding a breach to establish fraudulent motive).

Likewise, each putative class member would need to prove that Aramark committed a fraudulent act separate from the breach.  Courts have held that establishing a fraudulent act for purposes of this cause of action requires proof that plaintiffs relied on a misrepresentation to their detriment.  *Id.* at *4.  Again, as discussed above, proving reliance would also inherently

require individualized inquiries into each putative class member's state of mind and the actions

they took or refrained from taking in response to the alleged misrepresentation. *See supra* 24-25.

     For these reasons, courts regularly have denied class certification under Federal Rule 23

for cases involving breach of contract accompanying a fraudulent act. *See, e.g.*, *Cuming v. S.C.*

*Lottery Comm'n,* No. 3:05-CV-03608-MBS, 2008 WL 906705, at *3 (D.S.C. Mar. 31, 2008)

(denying class certification for breach of contract accompanied by a fraudulent act claim, finding

that individualized inquiries were necessary to determine whether each class member was

actually misled or deceived by defendant); *Comer v. Life Ins. Co. of Ala.*, No. C/A 0:08-228-

JFA, 2010 WL 233857, at *5 (D.S.C. Jan. 14, 2010) (denying class certification of breach of

contract accompanied by a fraudulent act claim, holding that South Carolina's "definition of

fraud, combined with the requirement of fraudulent intent or motive at the time of each breach,

would seem to require individualized inquir[ies]").

### 2.    Plaintiffs' Pennsylvania Wage Payment and Collection Law ("PWPCL") claim in Count VIII requires proof of a contract, which in turn requires individualized inquiries that preclude certification.

     Aramark's Motion to Dismiss established that Plaintiffs' PWPCL claim is only a

mechanism to enforce contractual obligations. *See* Dkt. No. 15-1 at 28-29 (citing cases such as

*Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 470 (E.D. Pa. 2013) ("Relief under the

[P]WPCL is implausible without [the] existence of a contract.")). Accordingly, because

establishing that a contract existed would require individualized inquiries for the reasons

previously discussed above, *see supra* 22-24, class certification for Count VIII should be

precluded by Rules 23(a) and 23(b). *See, e.g.*, *Jarosz v. St. Mary Med. Ctr.*, No. CIV.A. 10-

3330, 2014 WL 4722614, at *12 (E.D. Pa. Sept. 22, 2014) (denying motion for certification of

PWPCL claims because individualized inquiries would be required to determine whether

plaintiffs earned wages "off-the-clock" but were not paid accordingly); *Panetta v. SAP Am., Inc.*,

No. CIV.A. 05-4511, 2006 WL 924996, at *4 (E.D. Pa. Apr. 6, 2006) (denying motion for class

certification because the contract at issue would need to be applied differently to different

people, defeating the superiority and predominance under Rule 23(b)(3)).

> **3.      Plaintiffs' remaining state law claims in Counts V, VI, VII, IX, X, XI, XII, and XIII require individualized inquiries that preclude certification.**

While the remaining state law claims in Counts V-VII and IX-XIII do not require

individualized proof of fraud, they each require Plaintiffs to establish that "wages" were

"earned" or "due" from Aramark.  *See* S.C. Code Ann. § 41-10-40; N.C. Gen. Stat. § 95-25.6; Ill.

Comp. Stat. § 115/4; N.Y. Lab. Law § 193(1); Iowa Code § 91A.5; Mass. Gen. Laws ch. 149, §

148; Cal. Lab. Code § 204; Cal. Bus. & Prof. Code § 17200.[2]  This necessarily introduces highly

individualized inquiries that preclude certification of these claims as well.  Specifically, similar

to the evidence necessary to establish a contract, to prove that Plaintiffs and the putative class

members were actually owed or due wages would require inquiries into each individual's

communications with Aramark regarding bonus eligibility.  *See supra* 22-24.  It also would

require the Court to review each putative class member's performance against his or her alleged

bonus criteria to determine the availability and calculation of potential economic damages for

these state law claims.  Again, these questions do not generate common answers because they

will require individualized, position-specific analyses – for thousands of managers across the

country – of each individual's verbal and written communications regarding bonuses, job

performance, the metrics for their departments, and other variables.

---

[2] Aramark does not concede that the bonus payments sought by Plaintiffs in the SAC should be considered "wages" under the state laws applicable to Counts V-VI and IX-XIII.  In fact Aramark has moved to dismiss Plaintiffs' claim under the Massachusetts Payment of Wages Act on the basis that bonuses are not "wages" covered by that Act.  *See* Dkt. No. 15-1 at 29-30.  But this issue does not need to be determined now to decide this Motion to Strike.

Courts have denied class certification for these state law claims in similar cases where proving wages owed required fact-intensive and individualized inquiries.  *See, e.g.*, *Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 871 (S.D. Iowa 2018) (denying motion for certification of Iowa Wage Payment and Collection Law claim seeking unpaid tips because "local discretion" and various managers' "individualized preferences" with regard to how tips are shared at various restaurants where class members worked precluded finding commonality or predominance); *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 295 (S.D.N.Y. 2015) (denying motion for certification of New York Labor Law claim for unpaid overtime because demonstrating the amount of overtime owed could not be accomplished with common proof and instead required individualized anecdotal evidence); see also *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 316 (N.D. Ill. 2010) (denying motion for certification of Illinois Wage Payment and Collection Law claim because plaintiffs' claims for unpaid "off-the-clock" work required individual examination of each plaintiff's various work schedules and job duties, all of which varied within the putative class).

In sum, the Court can conclude now based on the allegations alone that the putative statewide classes as pled in Counts V-VII and IX-XIII cannot satisfy Rules 23(a) and 23(b) because, among other reasons they do not raise common questions amenable to common answers established through common proof, individual questions of fact would predominate over claimed common questions, if any, and class adjudication is not the superior method for litigating these highly individual claims, which would not be manageable at a class-wide trial.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Aramark respectfully requests that the Court grant its Motion to Strike the nationwide class and statewide subclass allegations in the Second Amended Complaint and thus limit the causes of action to Plaintiffs' individual claims only, to the extent

that they survive the Motion to Dismiss.  Aramark reserves its right to seek to sever Plaintiffs'

individualized claims for each of these causes of action at the appropriate time.


Dated: May 15, 2019                            MORGAN, LEWIS & BOCKIUS LLP
          Philadelphia, Pennsylvania

                                               By: */s/  Michael J. Puma*
                                                   Michael J. Puma
                                                   Eric C. Kim
                                               1701 Market Street
                                               Philadelphia, PA  19103
                                               Tel: 215.963.5000
                                               Fax: 215.963.5001
                                               Email: michael.puma@morganlewis.com
                                                       eric.kim@morganlewis.com

                                               *Counsel for Defendant*